# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4580 | **DATE** | 3/29/2004 |
| **CASE TITLE** | Schmude vs. Sheahan, *et al.* | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Before the court are the responses to the court's Rule to Show Cause, issued October 8, 2003. The Motion to Disqualify Judge Norgle from hearing the Rule to Show Cause [docket entry 141-1] is denied. The Motions to Dismiss the Rule to Show Cause [docket entries 144-1; 145-1; 146-1; 147-1; 148-1; 149-1 and 150-1] are denied. The court finds that sanctions are appropriate in this matter. See attached. *Charles R. Norgle*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | Document Number |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 3 0 2004 | |
| X | Docketing to mail notices. | date docketed | 156 |
| | Mail AO 450 form. | JXM | |
| | Copy to judge/magistrate judge. | docketing deputy initials | |
| | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice |
| | | 2004 MAR 29 AM 10: 35 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DOCKETED
MAR 3 0 2004

| | |
|---|---|
| JOAN SCHMUDE, Administrator of the ) | |
| Estate of Louis Schmude ) | |
|         Plaintiff, ) | |
| ) | |
|     v. ) | Case No. 00 C 4580 |
| ) | Honorable Charles R. Norgle |
| MICHAEL SHEAHAN, in his official ) | |
| capacity as Cook County Sheriff, ) | |
| WILLIAM SPATZ, PATRICIA PULTZ, ) | |
| and LAWRENCE KOSCIANSKI ) | |
|         Defendants. ) | |

## OPINION AND ORDER

CHARLES R. NORGLE, District Judge:

### I. INTRODUCTION

In an order dated October 2, 2003, the court advised and gave notice to attorneys Edward R.

Theobald, Alan R. Brunell, and Anthony Pinelli (collectively "counsel") that the court intended to

proceed on a Rule to Show Cause as to why sanctions should not issue, under Federal Rule of Civil

Procedure 11 and the court's inherent powers. In that order the court stated that a Rule to Show

Cause would be issued expeditiously. On October 8, 2003, the court issued the Rule to Show Cause

("Rule"), and allowed counsel 45 days to respond in writing. The matter is now fully briefed and

before the court.

In summary, at issue are the pleadings filed and actions taken by private individual defense

attorneys. Following the removal of the action from state court and subsequent denial of remand,

the private individual defense attorneys procured the entry of an order in the state court declaring

them Special State's Attorneys to represent defendants in a matter pending in the federal court.

156

Thereafter, counsel repeatedly obtained orders in the state court for fees in excess of one-quarter of a million dollars, relating to the substantive matters before the federal court.

## II. BACKGROUND

This case arises out of the death of Louis Schmude. Schmude died on May 7, 2000, while in the custody of the Cook County Sheriff's Department. In the resultant lawsuit, Plaintiff (hereinafter "the Estate") claimed that Defendants[1] were liable under 42 U.S.C. § 1983 and various state law theories for damages arising out of Schmude's death. A detailed background concerning the procedural history of this case is necessary to place the Rule to Show Cause and the instant opinion in context.

### A. The State Court Civil Action and Subsequent Removal to Federal Court

On June 20, 2000, the Estate filed its original complaint in the Circuit Court of Cook County, naming only one Defendant, Cook County Sheriff Michael Sheahan (hereinafter "the Sheriff"). On June 27, 2000, the Sheriff was served with process. The Cook County State's Attorneys Office determined that a conflict of interest would exist if it represented the Sheriff, and so on July 6, 2000, Tyrone C. Fahner, Brian F. Hynes and Michael K. Forde of the law firm of Mayer, Brown & Platt were appointed to represent the Sheriff as Special State's Attorneys in the Circuit Court of Cook County by the Honorable David R. Donnersberger, the judge before whom the case was pending. On July 26, 2000, a Cook County Circuit Court judge granted the Estate leave to file an amended complaint, naming three individual Sheriff's Deputies, William Spatz, Patricia Pultz and Larry

---

[1] The Defendants named in the complaint were Michael Sheahan, in his official capacity as Cook County Sheriff, and three Cook County Sheriff's Deputies, individually: William Spatz, Lawrence Koscianski and Patricia Pultz.

Koscianski, as additional Defendants. On that same day, the Estate had summonses issued for all three additional Defendants.

On July 27, 2000, one day after the Estate filed its amended complaint, the Sheriff filed a Notice of Removal in the United States District Court for the Northern District of Illinois. Attached to the Sheriff's Notice of Removal was a copy of the original complaint, which named only the Sheriff as Defendant. At the time of removal, the Sheriff was the only Defendant served with process. Several weeks after the removal, the Cook County Sheriff's Department served Koscianski and Pultz with notice of the state court proceeding and a copy of the amended complaint. Spatz was never formally served with process in this case (more about this later).

After removal, on December 22, 2000, attorneys Theobald and Brunell filed their personal appearances in the federal court, along with motions to be appointed as Special State's Attorneys to represent Spatz and Koscianski. One week later, on December 27, 2000, attorney Michael Ficaro filed his personal appearance in the federal court, along with a motion to be appointed as a Special State's Attorney to represent Pultz. In these motions, counsel indicated that the individual Defendants would ordinarily have been represented by the Cook County State's Attorneys Office; however, due to a conflict of interest, the Cook County State's Attorneys Office could not represent them. Counsel further indicated that an Illinois statute provided that the court in which a case is pending may appoint an attorney as a Special State's Attorney for the limited purpose of representing

3

a party in that case. See 55 Ill. Comp. Stat. § 5/3-9008 (2003).[2] On December 27, 2000, the court took these motions under advisement. The Rule to Show Cause had its roots in these motions.

### B. The State Court Criminal Action and Resultant Stay of Proceedings in Federal Court

One month before removal, on June 22, 2000, Spatz, Pultz and Koscianski were indicted and charged with first-degree murder in connection with the death of Louis Schmude. Thus, in addition to defending themselves against civil claims in the federal court, all three individual Defendants were defending themselves against criminal charges brought by the Cook County State's Attorneys Office in the Circuit Court of Cook County. On December 29, 2000, the federal court stayed all proceedings in the civil case pending the outcome of the criminal prosecution.

On January 22, 2002, the criminal trial began. On March 12, 2002, in a bench trial before the Honorable Ronald A. Himel, all three Sheriff's Deputies were acquitted of the charges against them.

### C. The Stay of Proceedings in Federal Court Lifted

With the criminal trial concluded, the court returned to the civil matter. On March 18, 2002, after the conclusion of the criminal prosecution, attorney Theobald, on behalf of Spatz, filed a Renewed Motion to Remand to the Circuit Court of Cook County. At the March 22, 2002 hearing on the matter, the following exchange took place:

---

[2] The statutory text provides:
Whenever the State's attorney is sick or absent, or unable to attend, or is interested in any cause or proceeding, civil or criminal, which it is or may be his duty to prosecute or defend, *the court in which said cause or proceeding is pending may appoint some competent attorney to prosecute or defend such cause or proceeding,* and the attorney so appointed shall have the same power and authority in relation to such cause or proceeding as the State's attorney would have had if present and attending to the same . . . .
55 Ill. Comp. Stat. § 5/3-9008 (emphasis added).

COURT:

One of the issues the Court must deal with before deciding to lift the stay is who it is who will represent the defendants in this case, the individual defendants Spatz, Pultz and Koscianski.

Three attorneys have asked this Court to appoint them Special Assistant State's Attorneys pursuant to some Illinois statute. And I have some doubts about the applicability of that statute to this situation.

. . .

But I am going to ask that the plaintiffs and all counsel brief this issue of the applicability of the Illinois statute, which counsel suggests applies here.

But beyond that, if the Court does have the obligation or the discretion to appoint counsel as Special Assistant State's Attorneys, I will be candid with you and tell you that it is not likely that the Court would appoint any attorney who has previous experience with the State's Attorneys office. And each of the movants here who are asking to be appointed attorneys, Special Assistant State's Attorneys, in their curricula vita or résumé make a point of saying that they were in that office at some point in time or for some extended period of time.

And I will take this position initially, without ruling on it today, that it would be better to start, if at all, with attorneys who have not had experience in that office because of the particular relationship between the Sheriff and the State's Attorney's Office, given the background in this case, which involves the recent criminal prosecution.

So the first issue is whether that Illinois statute pertains.

There is no Sixth Amendment right to counsel in a civil matter. Each one of the defendants here has the right to employ his or her own attorney, if he or she chooses to do so.

But the motions are brought by individual attorneys who are asking to be appointed Special Assistant State's Attorneys.

And so that's the issue to brief.

The plaintiff certainly should be heard on this, the Sheriff should be heard, and each individual movant also should be heard.

And so you can submit simultaneous briefs on this issue within 21 days.

MR. THEOBALD:

Judge, I'd like to point out that that is not before the Court right now. The motion that I filed on behalf of William Spatz is to remand this case back to state court because - -

COURT:

Well, you're not in the case. You have filed an appearance, but along with that appearance you have filed a motion to be appointed a Special Assistant State's Attorney to represent Spatz. And what I'm saying is that motion may not be granted.

. . .

MR. THEOBALD:

... But notwithstanding any ruling, my client wants me as his attorney, regardless of any appointment by the State's Attorney's Office or not. And I'm asking under the law that the case go back to state court, because it was clearly improperly removed.

COURT:

Well, if you are withdrawing - - are you withdrawing your motion to be a Special Assistant State's Attorney in this case?

...

MR. THEOBALD:

At this particular time, sure.

The motion I presented today was to remand back to state court. Not to be appointed anything.

COURT:

Are you making a motion to withdraw your motion to be appointed as Special Assistant State's Attorney?

MR. THEOBALD:

Well, the motion I filed today, Judge, is to remand it. So that's - - I don't know how to respond to that.

COURT:

Well, I construe your answer is that you are not making a motion the [sic.] withdraw the motion.

MR. THEOBALD:

Well, I - -

COURT:

So to deal with this, you have 21 days to submit simultaneous briefings on the issue that I have discussed. And we will take it one step at a time. And so - -

MR. FICARO:

Judge, if I may speak on behalf of Miss Pultz. My name is Michael Ficaro.

Before the Court was my petition. I would withdraw my petition to be appointed Special Assistant State's Attorney by this Court and join in the motion for remand to state court.

...

COURT:

We will get to that in due course.

But if you are making a motion to withdraw your motion to be appointed a Special Assistant State's Attorney, your motion is granted. And if you want your appearance to be as private counsel - - for Pultz is it?

MR. FICARO:

Yes, your Honor.

COURT:

- - certainly your appearance would be received.

So are you filing an appearance as her private attorney in this matter?

MR. FICARO:

I have not yet filed an appearance in the court.

I'm here on the remand, your Honor. And most respectfully, I don't know if the Court has had the opportunity to review Mr. Theobald's remand motion. It appears --

COURT:

So are you making a motion to withdraw your motion to be appointed a Special Assistant State's Attorney?

MR. FICARO:

Yes.

MR. THEOBALD:

And on behalf of Mr. Spatz I will withdraw the motion - - the petition that I filed, and in Mr. Brunell's stead we will withdraw on Mr. Koscianski's behalf. So that issue is no longer before the Court.

. . .

COURT:

All right. So very well.

Then there no longer is the issue of the appointment of Special Assistant State's Attorneys.

Then what is before the Court is a motion to vacate the stay. That motion is granted and we will brief the issue of remand.

. . .

So the stay is granted only to the extent now to deal with the issue of remand.

Trans. of March 22, 2002 Hearing, pg. 3 - 10.

At this hearing, counsel for the individual Defendants withdrew their motions to be appointed as Special State's Attorneys. Attorney Brunell was not personally present, but attorney Theobald represented that he had the authority to appear in attorney Brunell's stead and to withdraw the motion. Thus, attorneys Theobald, Ficaro and Brunell appeared in this matter solely as private attorneys representing Spatz, Pultz and Koscianski, respectively.

### D. Proceedings in Federal Court Subsequent to the Stay Being Lifted

With the matter of representations seemingly settled, the court and the parties then proceeded with Spatz's March 18, 2002 Motion to Remand to the Circuit Court of Cook County. On April 22, 2002, the court issued an eight-page opinion denying Spatz's Motion to Remand to the Circuit Court of Cook County. See Schmude v. Sheahan, 198 F. Supp. 2d 964, 968 (N.D. Ill. 2002). On April 24,

2002, Spatz filed a Motion to Reconsider the Court's April 22, 2002 Ruling, which the court subsequently denied. Thereafter, on May 17, 2002, Spatz filed a Motion to Certify the Court's April 22, 2002 Ruling Pursuant to 28 U.S.C. § 1292(b), which the court granted. On June 14, 2002, the Seventh Circuit denied Spatz's Petition for Leave to Appeal. Thus, these rulings conclusively stated that the court had jurisdiction over the entire matter.

On May 8, 2002, the court completely lifted the stay of proceedings in this matter. On that same day, Pultz filed a motion for leave to file the personal appearance of Anthony Pinelli as additional counsel, which the court routinely granted. Pultz had two private attorneys.

Again, at this time, the individual Defendants were represented by private counsel, as the motions to be appointed as Special State's Attorneys had been withdrawn. On July 15, 2002, Defendants Spatz, Koscianski and Pultz filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 4(m), 12(b)(4), 12(b)(5) and 12(b)(6). On December 6, 2002, the court denied the Motion to Dismiss for failure to state a claim under Rule 12(b)(6). On April 23, 2003, the court denied the remaining grounds raised in the Motion to Dismiss. See Schmude v. Sheahan, 214 F.R.D. 487 (N.D. Ill. 2003).

### E. The Issue of Being Appointed as Special State's Attorneys Arises Again

On May 20, 2003, attorney Ficaro filed a motion to withdraw as counsel for Pultz. On May 23, 2003, a hearing on the matter was held. At that time, the following exchange took place:

COURT:
. . .
Now who is moving to withdraw?
MR. THEOBALD:
Mr. Ficaro is moving to withdraw for Patricia Pultz.
. . .
COURT:

Where is Mr. Ficaro?

MR. THEOBALD:

He has a hearing in the Daley Center, Judge.

COURT:

Mr. Ficaro is not here.

MR. THEOBALD:

I'm standing in in his stead. He has got two hearings over there.

COURT:

If he withdraws, who is coming in?

MR. PINELLI:

Judge, I already have an appearance on file as co-counsel for Miss Pultz, and I will remain.

COURT:

You are her private attorney?

MR. PINELLI:

Yes.

No. Judge, I am appointed by the Circuit Court of Cook County.

COURT:

What makes you think so?

MR. PINELLI:

I'm sorry?

COURT:

What makes you think so?

MR. PINELLI:

I have an order from Judge Lott in Chancery Court appointing me.

COURT:

When did that occur?

MR. PINELLI:

Last May, Judge.

COURT:

In this case?

MR. PINELLI:

Yes. No, not in this case.

We filed a petition with the agreement of the Cook County State's Attorney seeking to be appointed and seeking to represent Miss Pultz, and they agreed to that order.

COURT:

The order was entered on July 6, 2000, with respect to Special State's Attorneys by Judge Donnersberger, or someone with that name.

MR. PINELLI:

With respect to the Sheriff, yes, your Honor not the individual defendants.

COURT:

Okay. But you are not appointed counsel in this case.

MR. THEOBALD:

Yes.

MR. PINELLI:

Yes, I am. Yes, Judge.

COURT:

Let me see a copy of the order.

MR. PINELLI:

Judge, I didn't bring it with me today. I will have it here in half an hour.

COURT:

Once this case was removed, then no Judge in the state court could issue any orders in this case.

MR. PINELLI:

Judge, we didn't file this case or indicate that we were seeking any order with respect to any matter before your Honor. We filed the petition in the Circuit Court of Cook County seeking to have counsel appointed.

COURT:

Not in this case.

MR. THEOBALD:

Yes.

MR. PINELLI:

On behalf of the defendants.

COURT:

After it was here? After it was here?

MR. THEOBALD:

Yes.

MR. PINELLI:

After this case was removed, yes, sir.

COURT:

Then you cannot do that.

MR. THEOBALD:

Judge - -

COURT:

I'm talking to one attorney at a time.

MR. THEOBALD:

Well, I'm the same thing.

COURT:

Well, no you are not. You are not special attorneys appointed to this case.

Once this case was removed, it was removed, and no attorney, once removed, could go before any state judge and file a motion. And any order that would be entered under those circumstances would be an improper order and unenforceable.

Once the case is removed, just this Court makes such decisions.

You are not an appointed attorney in this case, nor is Mr. Theobald. If you are here, it is because you are employed by individuals.

MR. PINELLI:

Judge, I have my appearance on file on behalf of Miss Pultz, and I intend to litigate this matter and I will consider what you have said.

COURT:

Are you telling me that once this case was removed to the federal court, notwithstanding removal that you went before a state judge and filed a motion?

MR. PINELLI:

Not a motion, a petition.

COURT:

A petition. A pleading.

MR. PINELLI:

A separate lawsuit by Miss Pultz seeking to have counsel appointed on her behalf.

MR. THEOBALD:

Could I explain, Judge?

COURT:

Not you.

MR. THEOBALD:

I am involved in this too.

COURT:

We will get to you, Mr. Theobald.

MR. THEOBALD:

All right.

COURT:

Any order that was entered by any state judge appointing an attorney to represent a party in this case, once this case was removed to the federal court, is void.

That applies - - if that is what you did, if you, knowing of the removal, filed a petition or a motion before a state judge, that was improper conduct. And any order that a judge entered, once this case was removed to the federal court, was an improper order.

He or she acted without jurisdiction.

You did the same, Mr. Theobald?

MR. THEOBALD:

Yes, Judge.

. . .

A new independent action was filed, with the agreement of the Circuit Court, with the agreement of the State's Attorney of Cook County.

I, Mr. Pinelli, Mr. Brunell and Mr. Ficaro were appointed as Special State's Attorneys under a State Statute to represent them here. And this has been going on for probably - - well, I have been practicing for 29 years, and that's been the procedure, to go before a state court judge.

The only time that a federal court judge appointed a Special State's Attorney that I know of is when Judge Bua appointed me to represent the Sheriff 15 years ago.

COURT:

Once the case is remanded [*sic.*] to the federal court, the state court loses jurisdiction and cannot act with respect to that case any longer.

If you want to be here in this case, it is only as private counsel. As a matter of fact, several hearings back, when you filed a motion here with respect to being appointed a Special State's Attorney, the Court made some comments, and you then withdrew the motion.

I don't know if you then went to the state court. I don't know if you did that.

But once the case is in the federal court, no state judge can enter any order in that case. The state court has lost its jurisdiction.

And so if you are - - if you think that you are Special State's Attorneys in this case, that is not the case.

MR. THEOBALD:

. . .

But we - - I would disagree - - we have been appointed, we are here as private counsel, whatever, and we are - - we are here.

COURT:

Well, you are here only if you choose to act as private attorneys. And if that's what you want to do in this Court, you can be here as private attorneys.

But you are not special attorneys as far as this Court is concerned.

MR. THEOBALD:

We are just asking that Mr. Ficaro's appearance be withdrawn and - -

MR. PINELLI:

My appearance has been on file. You gave me leave to appear as Anthony Pinelli, Attorney at Law, sometime ago.

COURT:

You want to appear as a private attorney?

MR. PINELLI:

I want to continue in this matter. I will consider what your Honor has said today.

COURT:

It's not consideration, it's an order.

MR. PINELLI:

I understand it's an order.

COURT:

Who is going to pay your bill?

MR. PINELLI:

I don't know the answer to that as I stand here.[3]

COURT:

But it will not be Cook County and it will not be the State's Attorney.

Do you want to - -

MR. PINELLI:

---

[3] Approximately three months after this status hearing, attorney Pinelli filed a motion in the state court seeking attorney fees, which that court granted on August 19, 2003. See infra pg. 17.

Judge, I understand your order. And with all due respect, I understand your order. And now I have to decide what to do about it.

COURT:

Do you want to decide now?

MR. PINELLI:

I don't want to withdraw. I want to remain in the case.

COURT:

Well, you are here only as private counsel.

MR. PINELLI:

Your Honor, irrespective of my status, I filed an appearance and I would like to continue representing Miss Pultz. If what you are saying -- your order is your order, and now I have to consider whether I need to have some sort of an appeal, whether I need to just remain in the case.

I have no intention of withdrawing at this point or asking to withdraw here.

. . .

COURT:

And if you are here, you are here as a private attorney.

That's this Court's position.

And to reemphasize this for the record, once the case was brought here, having been removed from the state court to the federal court, no state judge could enter an order regarding this case.

That's this Court's position.

MR. PINELLI:

Yes, sir.

Trans. of May 23, 2003 Hearing, pg. 5-13.

Thus, at this hearing, all counsel were reminded that any post-removal motions must be made in the federal court. As indicated by the court, any petition or motion to be appointed as Special State's Attorney, made pursuant to 55 Ill. Comp. Stat. § 5/3-9008 or any other applicable law or rule of civil procedure, had to be brought in the federal court. In fact, after the above-excerpted discussion, the court proceeded to address the Sheriff's motion to amend the appointment of a Special State's Attorney, brought pursuant to 55 Ill. Comp. Stat. § 5/3-9008. The court reiterated that litigating issues concerning the removed case in the state court would be "improper conduct." As Pinelli indicated, the court's ruling on the issue of appointing a Special State's Attorney was clear

and counsel could have sought review by filing the proper pleading in the Seventh Circuit Court of Appeals. However, Pinelli did not file an appeal, nor did any other attorney. Rather, as discussed *infra*, counsel filed their petition to be appointed as Special State's Attorneys in the state court, a procedure that was in direct contradiction to this court's ruling on the issue.

### F. Other Attorneys Followed Proper Procedure to be Appointed as Special State's Attorneys

The attorneys for the Sheriff understood this admonition and order. A recitation of the steps that they took in order to be appointed as Special State's Attorneys, and obtain awards of attorney fees, will illustrate this point.

*Prior to removal*, on July 6, 2000, Tyrone C. Fahner, Brian F. Hynes and Michael K. Forde of the law firm of Mayer, Brown & Platt were appointed to represent the Sheriff as Special State's Attorneys in the Circuit Court of Cook County by the Honorable David R. Donnersberger, the judge before whom the case was pending. In accordance with 28 U.S.C. § 1450, those appointments remained in effect when the case was removed to federal court.

*After removal*, on December 28, 2000, the Sheriff filed a motion in the federal court to amend the appointment to allow Tyrone C. Fahner, Brian F. Hynes, Robert H. King, Jr. and Michael D. Smith of the law firm of Greenberg Traurig, P.C. to represent the Sheriff as Special State's Attorneys. This motion to amend the appointment was made as a result of one of the Sheriff's attorneys having changed law firms. The court granted that motion, and instructed the Sheriff's attorneys on how to seek attorney fee awards. On April 4, 2001, the Mayer, Brown & Platt attorneys filed a petition for attorney fees for work performed prior to removal, which the court granted. On November 12, 2002, the Greenberg Traurig attorneys also filed a petition for attorney fees, which

14

the court granted. On May 19, 2003, due to another one of the Sheriff's attorneys having changed law firms, the Sheriff filed another motion to amend the appointment to allow Brian F. Hynes, John F. Kennedy and Steven J. Thompson of the law firm of Shefsky & Froelich Ltd. to represent the Sheriff as Special State's Attorneys. The court granted that motion and again instructed the Sheriff's attorneys on how to seek attorney fee awards.

In their responses to the Rule to Show Cause, counsel indicate that another attorney for the Sheriff attempted to litigate the issue of appointments in the state court after removal. On November 3, 2000, attorney Hynes filed a motion in the Circuit Court of Cook County before the Honorable David R. Donnersberger seeking to amend his appointment as a Special State's Attorney. See Schedule of Exhibits, Ex. 6. That motion stated that it was seeking to amend the appointment as a result of attorney Hynes having changed law firms. See id., Ex. 6 ¶8. By order dated November 6, 2000, the Honorable David R. Donnersberger denied that motion, recognizing the fact that jurisdiction in the state court had ceased upon removal to the federal court. See id., Ex. 7. Thereafter, on December 28, 2000, attorney Hynes, and other attorneys from the law firm to which he had moved, properly filed that motion in federal court. Counsel were given notice of that motion, and thereby given notice of the proper procedure to be appointed as Special State's Attorneys.

Throughout this matter, the court reiterated that it had jurisdiction over all matters, including issues concerning representation and awards of attorney fees. On May 27, 2003, the court entered a Case Management order to that effect, instructing all attorneys appointed as Special State's Attorneys by this court to submit periodic fee petitions at 28 day intervals. The attorneys appointed as Special State's Attorneys have complied with that order, and the court has subsequently awarded additional attorney fee awards.

In contrast to the proper litigation conduct shown by the attorneys representing the Sheriff as Special State's Attorneys, attorneys Theobald, Brunell and Pinelli chose another form of conduct. Following removal, the court's denial of remand, an appeal of the denial of remand to the Seventh Circuit and repeated admonitions that further proceedings regarding this case in the state court would be improper, these attorneys repeatedly circumvented the federal court's authority and jurisdiction by obtaining fees and expenses in excess of $250,000 in the state court.

### G. Counsel Circumvented the Federal Court's Authority and Jurisdiction by Initiating a State Court Proceeding to be Appointed as Special State's Attorneys

Approximately one month after the March 22 hearing, and one week after the April 22 order denying the motion to remand, on April 29, 2002, attorney Theobald initiated a cause of action in the Circuit Court of Cook County, Chancery Division captioned In re Special State's Attorneys, case number 02 CH 08323. On April 30, 2002, a motion styled "Petitioner's Motion for Appointment of Special State's Attorney" was filed in the Circuit Court of Cook County, Chancery Division. That motion sought to have attorneys Theobald, Brunell, Ficaro and Pinelli appointed to represent Spatz, Koscianski and Pultz in the matter pending in the federal court. On the face of that motion, two attorneys, Ficaro and Pinelli, sought to represent Pultz. That motion stated:

> Petitioners are defendants in the case of ESTATE OF LOUIS SCHMUDE, et al., plaintiffs v. MICHAEL SHEAHAN, Cook County Sheriff, WILLIAM SPATZ, Cook County Deputy Sheriff, PATRICIA PULTZ, Cook County Deputy Sheriff, and LARRY KOSCIANSKI, Cook County Deputy Sheriff, defendants, 00 L 6557 later removed to federal court and renumbered as 00 C 4580.

The prayer for relief in that motion stated:

> Petitioners pray this Honorable Court to enter an order appointing Edward R. Theobald as a Special State's Attorney to represent WILLIAM SPATZ, Alan R. Brunell as a Special State's Attorney to represent LARRY KOSCIANSKI, and Michael A. Ficaro and Anthony Pinelli as Special State's Attorneys to represent

PATRICIA PULTZ and to retain jurisdiction over the appointments for the purpose of awarding counsel attorney's fees and expenses.

From that motion, it appears that notice was given to Patrick T. Driscoll, Jr. and Thomas M. Burnham of the Cook County State's Attorneys Office. That motion was ultimately granted by the Honorable Gay-Lloyd Lott, apparently presiding in the Chancery Court, on May 3, 2002.

After having been ostensibly appointed as Special State's Attorneys in the Circuit Court of Cook County, Chancery Division, counsel also filed numerous motions for awards of attorney fees in that court.[4] Theobald filed motions for attorney fees, which were granted by that court on the following dates: July 12, 2002; October 10, 2002; January 2, 2003; March 18, 2003; May 27, 2003; June 30, 2003; and September 25, 2003. Brunell filed motions for attorney fees, which were granted by that court on the following dates: July 12, 2002; March 18, 2003; and July 29, 2003. Likewise, Pinelli filed a motion for attorney fees, which was granted by that court on August 19, 2003. These fee motions were filed after the June 14, 2002 order of the Seventh Circuit denying Spatz's Petition for Leave to Appeal. The orders granting counsels' motions were entered predominantly by the Honorable Gay-Lloyd Lott, but some orders were also entered by the Honorable William Maki. On the face of the record, the total amount of attorney fees awarded by those orders was in excess of one-quarter of a million dollars.[5]

In short, counsel repeatedly proceeded to litigate issues regarding this case in the state court following removal, the court's denial of remand, an appeal of the denial of remand to the Seventh

---

[4] The court is not aware of attorney Ficaro filing any motions for attorney fees in the Circuit Court of Cook County, Chancery Division. As such, Ficaro is not a respondent to the present Rule. However, the court admonishes Ficaro for joining in the original petition to be appointed Special States Attorney on April 30, while this court retained jurisdiction over all matters.

[5] The court is unaware, and has not been informed by counsel, of what additional motions have been filed in the state court since October 2003.

17

Circuit and repeated admonitions that further proceedings regarding this case in the state court would be improper. Counsel used the other side of our federalism structure to litigate issues that should have been addressed in this court, with the federal court having jurisdiction over the entire matter.

### H. Rule to Show Cause

In light of these events, the court issued a Rule to Show Cause alleging that counsel had disobeyed the court's orders and acted improperly by seeking to become court-appointed counsel and obtaining numerous awards of attorney fees in the state court after the case had been removed to federal court. Further, the Rule to Show Cause alleged that counsels' conduct exhibited a lack of candor toward the court. The court then issued the Rule, giving counsel 45 days to respond in writing.

Approximately two weeks after the court issued the Rule to Show Cause, the parties pursuant to settlement, executed a Stipulation to Dismiss the underlying action, which the court entered. On November 24, 2003, counsel filed their answers to the Rule to Show Cause, as well as numerous motions to dismiss the Rule and a Motion for Recusal. During the December 5, 2003 status hearing, counsel sought an expedited ruling on the Motion for Recusal, which the court took under advisement. On February 3, 2004, attorney Theobald filed a motion to stay all other matters until the Motion for Recusal had been decided. On February 6, 2004, the court also took that motion under advisement.

Upon review of counsels' filings in response to the Rule to Show Cause, the court finds that the matters raised in counsels' answers to the Rule, the numerous motions to dismiss the Rule, and the Motion for Recusal are all inextricably intertwined. However, each motion will be decided separately, in turn, in the instant opinion. Since the decision as to the Motion for Recusal is

dispositive of whether the court should proceed to address the other matters, the court will address that issue first.

### III. MOTION FOR RECUSAL[6]

Counsel argue that recusal is required pursuant to 28 U.S.C. §§ 144, 455(a) and (b)(1). As a preliminary matter, the motion for recusal brought pursuant to § 144 is improper since no party's affidavit is included. See United States v. Barnes, 909 F.2d 1059, 1072 (7th Cir. 1990) (indicating that § 144 requires both an affidavit of a party and a certificate of counsel stating that the affidavit is made in good faith). Furthermore, the arguments which counsel advance in support of recusal pursuant to § 144 mirror the arguments raised pursuant to § 455(b)(1), and thus are subsumed in the analysis of whether recusal is warranted pursuant to § 455(b)(1), which is discussed *infra*. See Brokaw v. Mercer County, 235 F.3d 1000, 1025 (7th Cir. 2000) (stating that "[b]ecause the phrase 'personal bias or prejudice' found in section 144 mirrors the language of section 455(b), [an] analysis under section 144 is identical" ).

As to the arguments under 28 U.S.C. § 455, counsel argue that recusal is appropriate under 28 U.S.C. § 455(a) because there would exist an appearance of impartiality if the court proceeded on the Rule to Show Cause. Additionally, counsel argue that recusal is appropriate under 28 U.S.C.

---

[6] Following the issuance of the Rule to Show Cause, attorney Theobald again caused the filing of pleadings in the state court seeking counsel to represent him. On December 4, 2003, attorney Robert V. Boharic filed an appearance on behalf of attorney Theobald. See Attorney Appearance of Robert V. Boharic [docket entry 139-1]. On December 5, 2003, attorneys Boharic and Theobald presented and argued the Motion to Recuse. After questioning, the court became aware that attorneys Boharic and Theobald had filed a pleading in the Illinois Circuit Court, Chancery Division seeking attorney Boharic to be appointed as a Special State's Attorney to represent attorney Theobald. See Trans. of December 5, 2003 Hearing, pg. 2-4. In this opinion, the court will not address the actions of attorneys Boharic or Theobald seeking an additional appointment in the state court for a proceeding in the federal court, which is an issue regarding the Rule to Show Cause issued against counsel.

Attorneys Brunell and Pinelli did not seek appointed counsel in the state court. Pinelli represented himself and Brunell retained two attorneys to represent him in response to the Rule.

§ 455(b)(1) because the court has personal knowledge of disputed evidentiary facts, as well as a personal bias against counsel. The court will address each of these arguments in turn.

### A. 28 U.S.C. § 455

Section 455 of Title 28 of the United States Code is a collection of various grounds for recusal. Grounds for recusal under § 455 are divided into two sections. See Microsoft Corp. v. United States, 530 U.S. 1301 (2000). Section 455(b) enumerates certain instances where recusal is required; subsection (1) covers bias and prejudice grounds and subsections (2-5) cover interest and relationship grounds. See 28 U.S.C. § 455(b)(1-5); see also Liteky v. United States, 510 U.S. 540, 547-48 (1994). The other section, § 455(a), has been termed the "'catchall' recusal provision, covering both 'interest and relationship' and 'bias and prejudice' grounds." Liteky, 510 U.S. at 548. While § 455(b) is concerned with the reality of bias, prejudice, interest or relationship; in contrast, § 455(a) is concerned only with the appearance of impartiality. See id.

### 1. 28 U.S.C. § 455(a)

Section 455(a) is concerned with whether there would be an *appearance* of impartiality if a given judge presided over a case. See id. Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The inquiry under § 455(a) is based on an objective standard. See Liteky, 510 U.S. at 548. Thus, the inquiry to be made is whether a reasonable observer, informed of all the surrounding facts and circumstances, would perceive a significant risk that the judge will resolve the case on a basis other than the merits. See Microsoft, 530 U.S. at 1301; Hook v. McDade, 89 F.3d 350, 354 (7th Cir. 1996) (citation omitted); Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710, 715 (7th Cir. 1986). "The decision

whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." Cheney v. United States District Court for the District of Columbia, - - U.S. - - , 2004 WL 524885, at * 1 (March 18, 2004) (quoting Microsoft, 530 U.S. at 1302). This inquiry is made based on a reasonable person standard, as opposed to "a hypersensitive or unduly suspicious person." Hook, 89 F.3d at 354 (citation omitted). Thus, trivial risks of perceived impartiality are insufficient to warrant recusal. See id.

The objective, reasonable person standard of § 455(a) is intended to promote public confidence in the impartiality of the judicial process. See Pepsico, Inc. v. Marion Pepsi-Cola Bottling Co., 99 C 3939, 2000 WL 263973, *12 (N.D. Ill. Mar. 6, 2000). "In furthering the policy of public confidence in the impartiality of the judicial process, a court faced with a motion under § 455(a) must recuse itself where valid reasons are presented, and must not recuse itself where the proffered reasons are not valid." Ramirez v. Elgin Pontiac GMC, Inc., 187 F. Supp. 2d 1041, 1044-45 (N.D. Ill. 2002) (citing New York City Housing Development Corp. v. Hart, 796 F.2d 976, 981 (7th Cir. 1986)); see also United States v. Baskes, 687 F.2d 165, 170 (7th Cir. 1981) ("A motion for recusal should not be granted lightly; a judge is under as much obligation not to recuse himself when facts do not show prejudice as he is to recuse himself if they do.").

In support of recusal pursuant to § 455(a), counsel argue that there would exist an appearance of impartiality if the court proceeded on the Rule to Show Cause. This argument is based on the following allegations: (1) the court's reaction to a newspaper article, and what counsel classify as a resultant "investigation" into the state court proceeding and (2) the court assumed the roles of complainant, prosecutor, judge and jury in issuing the Rule to Show Cause. As the court will discuss, recusal is not warranted pursuant to § 455(a).

### a. *Judicial Notice as Giving Rise to an Appearance of Impartiality*

In the Rule to Show Cause, the court indicated that it took judicial notice of an article on the front page of the Chicago Tribune. See Mickey Ciokajlo, Inmate's widow settles for $550,000, Chicago Tribune, Sept. 6, 2003, at 1. The article stated that "[t]he county has already spent more than $380,000 to defend the civil case, a figure that includes paying for private attorneys for the officers who were acquitted of murder charges during a criminal trial last year." Id. The article brought to the court's attention that the issue of attorney fees may be having an effect on the fair disposition of this matter, and raised some questions as to counsels' conduct. See Rule to Show Cause [docket entry 117-1]. The questions were raised as to counsels' conduct because the court had not authorized the amount of attorney fees stated in the article, had issued an order finding that removal to the federal court was proper, and admonished counsel that no other court could adjudicate issues arising in this matter after removal to the federal court. See id. Procedural protections on these issues were obviously appropriate and afforded to counsel.

After having taken judicial notice of that article, the court took judicial notice of a case filed in the Circuit Court of Cook County, Chancery Division. According to the state court record, on April 29, 2002, attorney Theobald initiated a cause of action in the Circuit Court of Cook County, Chancery Division, captioned In re Special State's Attorneys, case number 02 CH 08323. Counsel sought and obtained attorney fees in excess of $250,000 in that action. As a result of this information, the court issued the Rule to Show Cause. It is counsels' argument that such conduct, taking judicial notice of a newspaper article and a state court record, gives rise to an appearance of impartiality.

22

As a preliminary matter, counsels' argument presents an untenable legal position in light of the fact that they informed the court of the state court proceedings during the May 23, 2003 status hearing. Indeed, during that status hearing counsel admitted that they had filed pleadings in the state court after removal, the court's denial of remand, and an appeal of the denial of remand to the Seventh Circuit. Further, at that status hearing attorney Pinelli offered to produce relevant pleadings and orders from the state court proceeding; however, none were ever produced to the court. It is inconsistent for counsel to have informed the court of the state court proceedings, and then to later argue that taking notice of those proceedings was improper. However, even if the court had not been informed of the state court proceedings by counsel, taking judicial notice of those proceedings was proper, as the court shall discuss.

The argument in support of recusal confuses the concept of taking judicial notice with launching an investigation, in the vernacular sense. Federal Rule of Evidence 201, styled "Judicial Notice of Adjudicative Facts," provides how and when a court may take judicial notice. The concept of taking judicial notice where proper may be done by the federal district courts, as well as the federal courts of appeal. See Fed. R. of Evid. 201 (judicial notice) and Rule 1101(a) (indicating that "[t]hese rules apply to the United States district courts [and]... the United States courts of appeal"). In fact, it is routine for courts to take judicial notice of both newspaper articles and court records, among other things. See, e.g., Mirfasihi v. Fleet Mortgage Corp., 356 F.3d 781,787 (7th Cir. 2004) (taking judicial notice of newspaper article); Medhin v. Ashcroft, 350 F.3d 685, 690 (7th Cir. 2003) (taking judicial notice of State Department report concerning hostilities in Ethiopia); Jutzi-Johnson v. United States, 263 F.3d 753 (7th Cir. 2001) (taking judicial notice of study concerning jail inmate suicide statistics); Cochran v. NYP Holdings, 210 F.3d 1036, 1038 (9th Cir. 2000) (taking judicial

23

notice of publicity and media coverage); <u>Burbank-Glendale-Pasedena Airport Authority v. City of Burbank</u>, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of pleadings filed in related state court proceeding); <u>United States v. Jones</u>, 29 F.3d 1549, 1553 (11th Cir. 1994) (taking judicial notice of another court's order for the limited purpose of recognizing judicial act involved or subject matter of the litigation); <u>Happel v. Wal-Mart Stores, Inc.</u>, 286 F. Supp. 2d 943, 945 (N.D. Ill. 2003) (taking judicial notice of publicly-recorded papers from prior court proceedings). In fact, "'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records.'" <u>General Elec. Capital Corp. v. Lease Resolution Corp.</u>, 128 F.3d 1074, 1081 (7th Cir. 1997) (quoting 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 505 (1st ed. 1977 & Supp.1997)); <u>see also</u> <u>Opoka v. INS</u>, 94 F.3d 392, 394 (7th Cir. 1996) (recognizing that proceedings in other courts, both inside and outside the federal system, may be judicially noticed); <u>Henson v. CSC Credit Servs.</u>, 29 F.3d 280, 284 (7th Cir. 1994) (confirming that court documents from state proceedings are noticeable).

However, "courts should distinguish between taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited." 21 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5106, at 505 (1st ed. 1977 & Supp.1997). "A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related findings.'" <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2nd Cir. 1991) (quoting <u>United States ex rel. Geisler v. Walters</u>, 510 F.2d 887, 890 n.4 (3rd Cir. 1975)); <u>see also</u> <u>In re Indian Palms Associates, Ltd.</u>, 61 F.3d 197, 205 (3rd Cir. 1995) ("[I]t is not seriously questioned that the filing of documents in the case

record provides competent evidence of certain facts - that a specific document was filed, that a party took a certain position, that certain judicial findings, allegations, or admissions were made.").

In the present case, the court took judicial notice of the newspaper article and the In re Special State's Attorneys proceeding in the Circuit Court of Cook County, Chancery Division for the purpose of issuing the Rule to Show Cause why counsel should not be sanctioned. The purpose of the Rule to Show Cause was to have counsel respond to the court's inquiry, concerning whether they had improperly sought appointments and attorney fees in the state court after the underlying matter had been properly removed to federal court. The court did not take judicial notice of the In re Special State's Attorneys court records for any purpose other than to recognize the act of filing that state court action and the subject matter of that litigation. See, e.g., Jones, 29 F.3d at 1553 (indicating that judicial notice may be taken of another court's order for the limited purpose of recognizing judicial act involved or subject matter of the litigation). Further, in their responses to the Rule to Show Cause, counsel have not disputed the act of filing that state court action nor the subject matter of that litigation, which concerned appointments and awards of attorney fees for the representation of defendants in the case pending in federal court. Also, as indicated earlier, during the May 23, 2003 status hearing, counsel admitted without specificity that they had filed pleadings in the state court after removal, the court's denial of remand, and an appeal of the denial of remand to the Seventh Circuit.

To characterize taking judicial notice of a newspaper article on the front page of the Chicago tribune or a court filing as an "investigation" simply is incorrect. The common and permissible practice of taking judicial notice would not cause a reasonable person, informed of all the surrounding facts and circumstances, to question the impartiality of the court.

### b. *Issuance of the Rule to Show Cause as Giving Rise to an Appearance of Impartiality*

In general, due process protections must be afforded before sanctions may be imposed, whether pursuant to Federal Rule of Civil Procedure 11 or the court's inherent authority. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991); In re Rimstat, 212 F.3d 1039, 1045 (7th Cir. 2000) (indicating that the subject of sanctions must receive fair notice that they are in jeopardy of being sanctioned by the court). The exact calculus of due process depends on the circumstances of a particular case, but at a minimum, notice and opportunity to be heard are required. See Link v. Wabash R.R., 370 U.S. 626, 632 (1962).

In this case, the court issued the Rule and delineated the conduct which it alleged was sanctionable, and allowed counsel 45 days to respond, thereby complying with the required due process procedures. However, counsel argue that the very issuance of the Rule is indicative of an appearance of impropriety, and warrants recusal.

Their argument in support of recusal confuses the distinction between an order to show cause why sanctions should not be issued and civil contempt or criminal contempt (and further, whether the contempt was direct, having occurred in-court, or indirect, having occurred out-of-court), as varying procedural rights are implicated. See, e.g., Young v. United States *ex rel.* Vuitton, 481 U.S. 787, 798 (1987). By way of example, in a criminal contempt proceeding, the judge issuing a rule to show cause is automatically disqualified from hearing the criminal matter if the contempt "involves disrespect toward or criticism of a judge." Fed. R. Crim. P. 42(c)(3); see also Taylor v. Hayes, 418 U.S. 488, 501 (1974) (holding that judge who had become embroiled in a "running controversy" with an attorney that resulted in "marked personal feelings . . . on both sides," and

during which the judge had displayed an "unfavorable personal attitude" toward the attorney, could not try the attorney for criminal contempt); Mayberry v. Pennsylvania, 400 U.S. 455, 456-60 (1971) (holding that judge could not subsequently try a litigant for criminal contempt where the litigant called the judge, among other epithets, a "dirty sonofabitch," a "dirty tyrannical old dog," a "fool," and had charged the judge with running a "Spanish Inquisition").

The Rule ordered counsel to respond why they should not be subject to sanctions for their conduct. The Rule did not order counsel to respond to why they should not be held in contempt, either civil or criminal. Furthermore, in this case, the conduct alleged to be sanctionable did not involve disrespect toward or criticism of the judge of this court. The conduct alleged to be sanctionable involved violations of well-settled law concerning the jurisdiction of federal courts following removal, as well as violations of ethical norms.

In essence, counsel seem to object to the *sua sponte* nature of the Rule to Show Cause. However, a rule to show cause, whether for sanctions or for contempt, may be issued by a court *sua sponte* or upon motion by a party. See Fed. R. Civ. P. 11(c)(1) (indicating that sanctions for violations of Rule 11 may be initiated upon motion by a party or on the court's own initiative); Chambers, 501 U.S. at 43 (indicating that courts may act *sua sponte* in imposing sanctions); Young, 481 U.S. at 799 (indicating that prosecutions for criminal contempt proceed at the instigation of the court). Thus, this argument is without merit, and the following quote is instructive on this point:

> [T]he judge is on the bench in the first place . . . because of superior legal background, expertise, or credentials, and for that reason should not sit as a passive observer who functions solely when called upon by the parties. Rather, the judge should take an active role, when necessary, to ensure fairness and to conform the proceedings to the law.

27

Jones v. Page, 76 F.3d 831, 850 (7th Cir. 1996). A reasonable person would not perceive a significant risk that the court will resolve the case on a basis other than the merits, simply because it has issued a rule to show cause why sanctions should not issue. Compare Barry v. Sigler, 373 F.2d 835, 836 (8th Cir. 1967) ("Merely because a trial judge . . . has found it necessary to cite a party for contempt, does not automatically or inferentially raise the issue of bias."). Furthermore, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." Liteky, 510 U.S. at 554. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Id.

By its very nature, the Rule to Show Cause was issued against counsel, and without more does not support an appearance of impartiality. In sum, counsel have failed to show that there would exist an appearance of impropriety if the court proceeded on the Rule to Show Cause. A reasonable observer, informed of all the surrounding facts and circumstances, would not perceive a significant risk that the court will resolve the issues framed in the Rule to Show Cause on a basis other than the merits, and as such, recusal is not warranted pursuant to § 455(a).

### 2. 28 U.S.C. § 455(b)(1)

In contrast to recusal under § 455(a), § 455(b) is concerned with whether the court harbors an *actual* personal bias or prejudice against one party or in favor of another party, as opposed to the appearance of impartiality. See Liteky, 510 U.S. at 548. Thus, recusal under § 455(b) presents a more difficult burden. Section 455(b)(1) provides that a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary

28

facts concerning the proceeding." 28 U.S.C. § 455(b)(1). The inquiry under § 455(b)(1) is also evaluated on an objective basis. See Brokaw, 235 F.3d at 1025. Thus, the inquiry to be made is "whether a reasonable person would be convinced the judge was biased." Grove Fresh Dist., Inc. v. John Labatt, Inc., 299 F.3d 635, 640 (7th Cir. 2002) (citation and internal quotations omitted).

Further, recusal under § 455(b)(1) is required "only if *actual* bias or prejudice is proved by compelling evidence." O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 988 (7th Cir. 2001) (emphasis added); Hook, 89 F.3d at 355. "'The negative bias or prejudice from which the law of recusal protects a party must be grounded in some personal animus or malice that the judge harbors against him, of a kind that a fairminded person could not entirely set aside when judging certain persons or causes.'" Hook, 89 F.3d at 355 (quoting United States v. Balistrieri, 779 F.2d 1191, 1201 (7th Cir. 1985)). Thus, like § 455(a), this bias with which § 455(b)(1) is concerned must arise from an extrajudicial source. Id. (citing Liteky, 510 U.S. at 555-56).

As for the argument that recusal is appropriate under 28 U.S.C. § 455(b)(1), counsel argue that the court has personal knowledge of disputed evidentiary facts, as well as a personal bias against counsel or their clients. This argument is based on the following allegations: (1) the court has what counsel classify as "extrajudicial" knowledge of disputed evidentiary facts from the state court proceeding; (2) the court has a personal bias against counsel based on what counsel classify as the court's "investigation"; and (3) the court has made statements in open court and in a written opinion that indicate a personal bias against counsel or their clients. As the court will discuss, recusal is not warranted pursuant to § 455(b)(1).

### a. *Judicial Notice as Giving Rise to Personal Knowledge of Disputed Evidentiary Facts*

As already indicated, the court took judicial notice of the In re Special State's Attorneys proceeding in the Circuit Court of Cook County, Chancery Division for the purpose of issuing the Rule to Show Cause why counsel should not be sanctioned. The purpose of the Rule to Show Cause was to have counsel respond to the court's inquiry, concerning whether they had improperly sought appointments and attorney fees in excess of $250,000, in the state court after the underlying matter had been properly removed to federal court. The court did not take judicial notice of the In re Special State's Attorneys court records for any purpose other than to recognize the act of filing that state court action and the subject matter of that litigation. See Jones, 29 F.3d at 1553 (indicating that judicial notice may be taken of another court's order for the limited purpose of recognizing judicial act involved or subject matter of the litigation). However, based on the court's having taken judicial notice of the In re Special State's Attorneys proceeding, counsel argue that this court now has personal knowledge of disputed evidentiary facts, requiring recusal under § 455(b)(1).

Once again, as a preliminary matter, counsels' argument presents an untenable legal position in light of the fact that they informed the court of the state court proceedings during the May 23, 2003 status hearing. Indeed, during that status hearing counsel admitted that they had filed pleadings in the state court after removal, the court's denial of remand, and an appeal of the denial of remand to the Seventh Circuit. Further, at that status hearing attorney Pinelli offered to produce relevant pleadings and orders from the state court proceeding; however, none were ever produced to the court. It seems inconsistent for counsel to have informed the court of the state court proceedings during a status hearing, and then to later argue that taking notice of those proceedings evidences personal

knowledge of disputed evidentiary facts. However, even if the court had not been informed of the

state court proceedings by counsel, taking judicial notice of those proceedings was proper, and the

court has not acquired personal knowledge of disputed evidentiary facts from an extrajudicial source

with which the law of § 455(b)(1) is concerned.

This argument in support of recusal also confuses the concept of taking judicial notice with

the personal knowledge of the judge. The act of taking judicial notice is simply irrelevant to whether

a judge does or does not have personal knowledge of that being judicially noticed. The distinction

between judicial notice and the personal knowledge of the judge is clearly delineated in an

authoritative treatise on evidence:

> Judicial notice of adjudicative facts in any particular case is not determined or
> circumscribed by the personal knowledge of the individual court. It is
> inconsequential that matters of judicial cognizance are actually known or unknown
> to the judge. As long as the facts are a proper subject for notice, the judge may be
> informed of the indisputability of the facts in any reasonable way. Likewise, facts
> which are not subject to judicial cognizance must be proved, even though personally
> known to the court to be true.

Weissenberger's Federal Evidence § 201.4 (2d ed. 1995). The fact that the court is aware of the In

re Special State's Attorneys proceeding, having taken judicial notice of it, does not implicate the

kind of personal knowledge of disputed facts with which § 455(b)(1) is concerned.

The argument that the court has personal knowledge of disputed evidentiary facts, as a result

of having taken judicial notice of the In re Special State's Attorneys proceeding, misconceives the

nature of the personal knowledge that requires recusal under § 455(b)(1). The distinguishing factor

is in what capacity the allegedly biasing influence has come to the court's attention. The

"extrajudicial source," which recusal is concerned with, does not mean conduct arising or

information learned geographically outside of courtroom, but rather, means conduct arising or

31

information learned from something outside the court's judicial capacity. See McCann v. Communications Design Corp., 775 F. Supp. 1506, 1527 (D. Conn. 1991); see also Crenshaw v. Dywan, 34 F. Supp. 2d 707, 709 (N.D. Ind. 1999); Geneva Assurance Syndicate, Inc. v. Medical Emergency Services Assoc., S.C., No. 92 C 1652 1993WL384566, *4 (N.D. Ill. 1993). "[F]acts learned by the judge in his judicial capacity cannot be the basis for disqualification." United States v. Patrick, 542 F.2d 381, 390 (7th Cir. 1976); see also Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse - Wisconsin Inc., 991 F.2d 1249, 1255 (7th Cir. 1993) (noting that facts learned by a judge in his or her judicial capacity cannot be the basis for disqualification). In the present case, the existence of the In re Special State's Attorneys proceeding was learned, or judicially noticed, by the court in its judicial capacity. Thus, having been learned by the court in its judicially capacity, such information is not in any way indicative of the kind of personal bias with which the law of recusal is concerned. If counsels' argument were taken to its logical end, then no court could ever take judicial notice of any fact without the invitation of a litigant.

"The point of distinguishing between 'personal knowledge' and knowledge gained in a judicial capacity is that information from the latter source enters the record and may be controverted or tested by the tools of the adversary process, [while] [k]nowledge received in other ways, which can be neither accurately stated nor fully tested, is 'extrajudicial.'" Edgar v. K.L., 93 F.3d 256, 259 (7th Cir. 1996). In Edgar, the district court judge conducted *ex parte* meetings with a panel of experts concerning the panel's conclusions as to a matter in dispute, which warranted recusal. See id. at 257, 259. In contrast with Edgar, the court's having taken judicial notice of the In re Special State's Attorneys proceeding is a part of the record in this case and could have been controverted by

counsel. Furthermore, all that the court took judicial notice of was the fact of the state court filing and the general subject matter of that proceeding. However, as already indicated, counsel have not disputed the act of filing the In re Special State's Attorneys proceeding nor the subject matter thereof. Thus, the court has not acquired personal knowledge from an extrajudicial source with which the law of § 455(b)(1) is concerned. See Liteky, 510 U.S. at 554-56. Further, counsel have failed to prove, by compelling evidence, that the court harbors the type of "'personal animus or malice . . ., of a kind that a fairminded person could not entirely set aside when judging certain persons or causes.'" Hook, 89 F.3d at 355 (quoting Balistrieri, 779 F.2d at 1201).

The existence of the In re Special State's Attorneys proceeding is not a disputed fact. In their responses to the Rule to Show Cause, and in their statements to this court, counsel have not disputed the act of filing the In re Special State's Attorneys proceeding nor the subject matter thereof. In short, no disputed evidentiary fact has been highlighted by counsel; however, to the extent one existed the court would have looked to counsels' responses. Counsels' responses only raise legal arguments as to the effect of that proceeding, specifically whether the federal court or the state court has the exclusive jurisdiction to consider matters relating to representation and attorney fees regarding a case pending in the federal court.[7]

### b. The Court's "Investigation" as Giving Rise to a Personal Bias Against Counsel

As already indicated, to characterize the taking of judicial notice of a state court proceeding as an "investigation" is simply incorrect. The taking of judicial notice would not cause a reasonable person to question the impartiality of the court, see 28 U.S.C. § 455(a), and as such, would not lead a reasonable person to conclude that the court harbors an actual bias against counsel. See O'Regan,

---

[7] The court will address that issue, and the effect of the state court proceeding *infra*.

246 F.3d at 988 (indicating that recusal is required "only if *actual* bias or prejudice is proved by compelling evidence").

However, even if the court were to have conducted an investigation beyond simply taking of judicial notice of the In re Special State's Attorneys proceeding, there would be nothing inappropriate with doing so, and subsequently issuing the Rule to Show Cause. "[T]he court's inherent authority includes the 'power to conduct independent investigations in order to determine whether the court has been the victim of fraud or deceit.'" United States v. Johnson, 327 F.3d 554, 561 (7th Cir. 2003) (quoting Winkler v. Eli Lilly & Co., 101 F.3d 1196, 1200 n.2 (7th Cir. 1996)); see also Universal Oil Products v. Root Refining Co., 328 U.S. 575, 580 (1946) (noting that the "inherent power of a federal court to investigate whether a judgment was obtained by fraud, is beyond question"); Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1119 (1st Cir. 1989) (recognizing that "[t]here is an irrefragable linkage between courts' inherent powers and the rarely-encountered problem of fraud on the court"). As the Supreme Court stated in Hazel-Atlas Glass Company v. Hartford-Empire Co., 322 U.S. 238, 246 (1944):

> [T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society. Surely it cannot be that preservation of the integrity of the judicial process must always wait upon the diligence of litigants. The public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud.

Resorting to the court's inherent authority to conduct independent investigations in order to determine whether it has been the victim of fraud or deceit, is in no way indicative of a personal bias against counsel or litigants. Rather, such conduct is appropriate to maintain the authority of the court and to allow it to fulfill its Article III duties to decide cases fairly. Thus, a court's resorting to its

34

inherent authority, without more, would not lead a reasonable person to conclude that the court harbors the type of actual bias against counsel required to warrant recusal pursuant to § 455(b)(1).

### c. *Judicial Remarks as Giving Rise to a Personal Bias Against Counsel or their Clients*

Lastly, counsel argue that recusal is required because the court has made certain remarks that are indicative of a personal bias against counsel or their clients. Specifically, counsel argue that the court treated them differently than other attorneys, whom the court appointed as Special State's Attorneys to represent the Cook County Sheriff, Michael Sheahan, in his official capacity. Additionally, counsel argue that language in one of the court's opinions is indicative of a personal bias against counsel, particularly attorney Theobald. The court will address each of these arguments in turn.

As a preliminary matter, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555; see also In re Mann, 229 F.3d 657, 659 (7th Cir. 2000) (finding that district court judge's comment that party's motion would probably be denied was insufficient to warrant recusal); Marozsan v. United States, 90 F.3d 1284, 1290 (7th Cir. 1996) (indicating that the mere fact that a district court judge ruled against a litigant on several issues held to be insufficient to show impermissible prejudice); Hook, 89 F.3d at 355 (indicating that a district court judge's criticism of a motion not enough to demonstrate bias); Federal Trade Comm'n v. Amy Travel Service, Inc., 875 F.2d 564, 576 n.13 (7th Cir. 1989) (indicating that friction between a judge and counsel does not constitute bias warranting recusal). Judicial remarks may support a bias or partiality challenge only "if they reveal an opinion that derives from an extrajudicial source; and . . . reveal such a high degree

of favoritism or antagonism as to make fair judgment impossible . . . ." Id. An example of such a remark occurred in Berger v. United States, where a judge, in a World War I era criminal case for violations of the Espionage Act, stated that "[o]ne must have a very judicial mind, indeed, not to be prejudiced against the German-Americans in this country [because] [t]heir hearts are reeking with disloyalty." Berger v. United States, 255 U.S. 22, 28 (1921); see also In re Chevron U.S.A., Inc., 121 F.3d 163, 166-67 (5th Cir. 1997) (finding that district court judge's expression of personal views regarding race, based on an extrajudicial source, gave rise to an appearance of impropriety in a case involving claims of racial discrimination).

The argument that the court treated counsel differently from other attorneys, whom the court appointed as Special State's Attorneys to represent the Cook County Sheriff, Michael Sheahan, in his official capacity, is based on the allegation that the court did not require those attorneys to provide any background information regarding their prior employers. Counsel argue that this evidences a personal bias because those other attorneys were similarly situated to counsel. However, this argument is without merit. First, the court did not require any attorneys to provide background information concerning their prior employers. Counsel provided that information in their motions to be appointed as Special State's Attorneys, which were presented to the court on December 22, 2000. Second, those other attorneys were not similarly situated to counsel. Those other attorneys represented the Cook County Sheriff in his official capacity; whereas, counsel sought to represent the three Sheriff's Deputies in their individual capacities. Also, the court did not originally appoint a Special State's Attorney for the Cook County Sheriff; rather, the Honorable David R. Donnersberger appointed them prior to removal. Thus, counsels' argument fails to distinguish that the other attorneys represented the institutional defendant, the Cook County Sheriff. This court's

primary concern was whether the three Sheriff's Deputies, sued in their individual capacities, were entitled to the appointments of Special State's Attorneys under the applicable statute, especially in light of their underlying criminal prosecutions. The individual Defendants were being prosecuted for murder by the Cook County State's Attorneys Office. The court was concerned whether the statute authorizing the appointment of Special State's Attorneys applied where the conduct at issue was criminal in nature, because if the statute is based on an agency theory, then conduct of a criminal nature would arguably be deemed outside of the scope of employment. The court asked for briefing on this issue; however, attorneys Theobald and Brunell withdrew their motions and no parties submitted briefs on the issue. The court mentioned counsels' prior employment as an aside, stating: "I will take this position initially, without ruling on it today, that it would be better to start, if at all, with attorneys who have not had experience in that office because of the particular relationship between the Sheriff and the State's Attorneys Office, given the background in this case, which involves the recent criminal prosecution." Trans. of March 22, 2002 Hearing, pg. 4-5. The facts and circumstances of this exchange indicate that the court was concerned with the applicability of the statute providing for the appointment of Special State's Attorneys, rather than what counsel argue was a pretextual reason to take counsel out of the case. See Cheney, - - U.S. - - , 2004 WL 524885, at * 1 (stating that "[t]he decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported.") As private attorneys for each individual Defendant, counsels' appearances were routinely allowed. Further, the court did not definitively rule on the appointments issue, but rather allowed the parties to brief the issue, which was not done. The court's comment that it would not likely appoint attorneys with ties to the State's Attorneys Office is not indicative of a personal bias against counsel.

37

See In re Mann, 229 F.3d at 659 (finding that district court judge's comment that party's motion would probably be denied was insufficient to warrant recusal).

Additionally, counsel argue that language in one of the court's opinions is indicative of a personal bias against counsel, particularly attorney Theobald. The alleged source of this personal bias is found in the court's order denying the individual Defendant's motion to dismiss. The allegedly biased text provides: "So preoccupied was Spatz' counsel [Theobald] with the alleged unfairness regarding removal, he has forfeited his claim of failure-to-serve by not timely arguing it before the court." Schmude v. Sheahan, 214 F.R.D. 487, 492 (N.D. Ill. 2003).

The allegedly biased text was included in the court's opinion denying the motion to dismiss. One of the three Sheriff's deputies, William Spatz, argued that he had never been served. In response, the Plaintiff had argued that Spatz had waived the failure-to-serve defense, because his attorney had appeared before the court on numerous occasions and filed numerous motions over a two-year period. The court agreed with Plaintiff, and recounted all of the appearances and filings of Spatz' counsel. See id. at 491-92. Thus, the court concluded: "At no time within this two year period did Spatz formally raise the defense of failure-to-serve pursuant to a specific rule of federal civil procedure. So preoccupied was Spatz' counsel with the alleged unfairness regarding removal, he has forfeited his claim of failure-to-serve by not timely arguing it before the court." Id. at 492.

The allegedly biased text in no way can support a fair argument that the court has a personal bias against counsel, particularly attorney Theobald. The court simply stated its reasoning for the finding that Defendant Spatz had forfeited his failure-to-serve defense through the actions of his attorney. Additionally, the extent or degree of concern with removal is supported by the record. Furthermore, "judicial remarks . . . that are critical or disapproving of, or even hostile to, counsel,

the parties, or their cases, ordinarily do not support a bias or partiality challenge." Liteky, 510 U.S. at 555. Therefore, counsel have failed to prove, by compelling evidence, that the court harbors an actual personal bias against counsel to warrant recusal pursuant to § 455(b)(1). See O'Regan, 246 F.3d at 988.

Furthermore, it bears emphasis that no party, including Spatz, filed a motion seeking the court's recusal immediately after that ruling. In fact, no party filed a motion seeking recusal in the three-year period from when the case was filed until the parties filed a Stipulation to Dismiss based upon a settlement and the court entered the final order. Rather, the present motion to recuse comes three years later, and only after issuance of Rule to Show Cause. Thus, a strong argument can be made that this motion is untimely. However, the case law in the Seventh Circuit is unclear on this point, compare United States v. Patrick, 542 F.2d 381, 390 (7th Cir. 1976) (holding that "one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification") with SCA Services, Inc. v. Morgan, 557 F.2d 110, 117 (7th Cir. 1977) (holding that there are no limits on motions for recusal brought pursuant to § 455); see also Union Carbide Corp. v. U.S. Cutting Service, Inc., 782 F.2d 710, 716 (7th Cir. 1986) (questioning the Morgan decision, and stating that it has been "uniformly rejected in the other circuits"), and the court need not rely on the timeliness issue, having found that the merits of this argument do not warrant recusal.

### B. Conclusion

Having found that recusal is not warranted in this case, the court will proceed to address the issues framed in the Rule to Show Cause and counsels' responses.

## IV. DISPOSITION ON THE RULE TO SHOW CAUSE

### A. The Court's Inherent Powers to Sanction Attorney Conduct

The federal courts possess certain inherent powers, "'which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.'" Chambers, 501 U.S. at 43 (quoting United States v. Hudson, 11 U.S. (7 Cranch) 32, 34 (1812)); see also Dale M. ex rel. Alice M. v. Board of Education, 282 F.3d 984, 985-86 (7th Cir. 2002) ("Courts have a broad power, deemed 'inherent' in the sense that its existence does not depend on an explicit grant of power in a statute or other formal enactment, to regulate the conduct of the lawyers who practice before them."). The federal courts "'are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'" Id. (quoting Anderson v. Dunn, 19 U.S. (6 Wheat) 204, 227 (1821)). A federal court also "'has the power to control admission to its bar and to discipline attorneys who appear before it.'" Id. (citing Ex parte Burr, 22 U.S. (9 Wheat) 529, 531 (1824)).

As part of the power to control the conduct of attorneys appearing before it, "'a federal court has the inherent power to sanction for conduct which abuses the judicial process,'" Johnson, 327 F.3d at 560 (quoting Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993)), and to "'prevent unprofessional conduct by those attorneys who are practicing before them . . ., including conduct that involves the exaction of illegal fees.'" Dale M., 282 F.3d at 986 (quoting Jackson v. United States, 881 F.2d 707, 710 (9th Cir. 1989)). Further, as the inherent powers are "rooted [in] considerations of institutional self-defense," United States v. Giannattasio, 979 F.2d 98, 101 (7th Cir. 1992), resort to such powers is appropriate where the conduct at issue, as in the present case, is counterproductive to the removal jurisdiction of the federal courts.

40

The Seventh Circuit "has recognized the need to be cautious when resorting to inherent powers to justify an action, particularly when the matter is governed by other procedural rules, lest (even in the absence of a direct conflict) the restrictions in those rules become meaningless." Kovilic Constr. Co., Inc. v. Missbrenner, 106 F.3d 768, 772-73 (7th Cir. 1997) (citing G. Heileman Brewing Co., Inc. v. Joesph Oat Corp., 871 F.2d 648, 652 (7th Cir. 1989) (en banc)). "So long as the inherent powers are exercised in harmony with applicable statutory or constitutional alternatives, then the latter need not displace the former." Johnson, 327 F.3d at 561 (citing G. Heileman Brewing Co., Inc. v. Joesph Oat Corp., 871 F.2d 648, 652 (7th Cir. 1989) (en banc)). "Sanctions authorized only by the inherent power of the court are therefore available only when no direct conflict with laws or national rules of procedure would arise." Missbrenner, 106 F.3d at 773. In accordance with this rationale, the Supreme Court in Chambers stated that courts should ordinarily rely on the Rules rather than their inherent power, "[b]ut if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent powers." Chambers, 501 U.S. at 50. "At the very least, the inherent power must continue to exist to fill in the interstices." Id. at 46.

Furthermore, "[b]ecause the inherent powers are so broad in scope, they are to be narrowly tailored in their application." Johnson, 327 F.3d at 562 (citing Chambers, 501 U.S. at 44-45). As such, the Seventh Circuit has stated that "[c]areful, case-specific consideration is owed therefore not only to the character of the sanctionable conduct, but also to the nature and purpose of the sanctions." Id. A court has discretion in "fashion[ing] an appropriate sanction for conduct which abuses the judicial process," Chambers, 501 U.S. at 45, but the sanction must be proportional to the wrongful conduct at issue. See Diettrich v. Northwest Airlines, Inc., 168 F.3d 961, 964 (7th Cir.

41

1999) (indicating that, when exercising inherent powers to sanction, "the punishment must fit the crime"). However, "[g]enerally, the harshest of sanctions have been upheld only in situations involving bad faith, contumacy, or egregious misconduct." Johnson, 327 F.3d at 563. "The district court may find willfulness, or bad faith, in the manner in which the attorney conducts the litigation." Magnus Elec., Inc. v. Masco Corp., 871 F.2d 626, 632 (7th Cir. 1989).

Thus, with this understanding of the court's inherent powers to impose sanctions, the court will now turn to the allegedly sanctionable conduct of counsel and determine whether the imposition of sanctions is warranted, and if so, what type of sanction is appropriate.

### B. Allegedly Sanctionable Conduct Delineated in the Rule to Show Cause

In sum, the Rule to Show Cause alleged that counsel had willfully disobeyed established statutory and case law authority and the court's orders by improperly seeking to become court-appointed counsel and obtaining numerous awards of attorney fees in the Circuit Court of Cook County after the cause of action had been removed to the United States District Court for the Northern District of Illinois, and where it remains pending. Further, the Rule to Show Cause alleged that counsels' conduct exhibited a lack of candor toward the court. The allegedly sanctionable conduct involved one simple matter - circumventing the federal court's removal jurisdiction.

In the Rule, the court reiterated the procedural history of the case, detailing the allegedly sanctionable conduct of counsel. In section IV of the Rule, styled "Grounds Underlying Possible Impropriety by Attorneys Appearing Before the Court," the court framed the issues for counsel to address. First, the court discussed the well-settled law regarding removal of a case from state court to federal court, stating that after removal any further orders of the state court are considered *coram non judice*, or without jurisdiction. Second, the court discussed the court's authority and jurisdiction

in regard to awards of attorney fees in cases that are pending before it, stating that this court was best suited to determine the issue of attorney appointments and fees and that such review was justified by the court's inherent right to supervise the members of its bar. Lastly, the court stated that attorneys practicing before the court owed a duty to act with candor toward the court, indicating that counsels' conduct fell short of that requirement. The Rule alleged discrete, readily ascertainable acts. The court then issued the Rule, giving counsel 45 days to respond in writing.

### C. Counsels' Responses to the Rule to Show Cause

Counsel have timely submitted written responses to the Rule. Attorneys Theobald and Pinelli filed a joint response to the Rule, including numerous exhibits, and attorney Pinelli has also filed a supplemental response. Attorney Brunell filed his own response to the Rule, but additionally adopted the response and exhibits submitted by attorneys Theobald and Pinelli. In each of their responses, counsel also raise numerous matters characterized as affirmative defenses. The matters characterized as affirmative defenses are also repetitive of the numerous motions to dismiss the Rule, which counsel have filed separately, and which are largely irrelevant and immaterial to the matters raised in the Rule to Show Cause. Additionally, the matters raised as affirmative defenses and in the motions to dismiss the Rule are also largely undeveloped or underdeveloped and lacking appropriate citations to controlling authorities.

Counsels' arguments can be described by what the Seventh Circuit has referred to as the "'everything but the kitchen sink' philosophy" of litigation. In re Maurice, 21 F.3d 767, 770 (7th Cir. 1994). In response to the singularly simple allegation that counsel circumvented the court's federal removal jurisdiction, counsel have responded with a total of 19 affirmative defenses and 7 separately filed motions to dismiss the Rule. In order to highlight the irrelevancy and immateriality

of counsels' arguments, the court will list all of the matters raised in the affirmative defenses and reiterated in the numerous motions to dismiss the Rule:

1. The court must give preclusive effect to the In re Special State's Attorneys proceeding based on the Full Faith & Credit Clause of Article IV, section 1 of the United States Constitution, as well as the Rooker-Feldman doctrine.

2. Article III of the United States Constitution limits the court from assuming jurisdiction not granted by Congress.

3. The Illinois Circuit Courts have exclusive jurisdiction to appoint Special State's Attorneys.

4. The court cannot assume jurisdiction to appoint Special State's Attorneys pursuant to an Illinois statute, because the Illinois Constitution vests such power solely in the Illinois Circuit Courts.

5. The court cannot assume jurisdiction over decisions to be made by the State's Attorneys Office of Cook County, because the Illinois Tort Immunity Act authorizes the State's Attorneys Offices to appear and defend their interests.

6. The Rooker-Feldman doctrine precludes the court from reviewing or reversing orders entered in the In re Special State's Attorneys proceeding.

7. The Eleventh Amendment to the United States Constitution bars the court from assuming jurisdiction over decisions made by the State's Attorneys Office of Cook County to consent to counsels' appointments in the Circuit Court of Cook County, Chancery Division.

8. The Eleventh Amendment to the United States Constitution bars the court from assuming jurisdiction over claims against counsel because they are Special State's Attorneys, which are considered Illinois Constitutional officers.

9. The court cannot assume jurisdiction over counsel, as Special State's Attorneys, because they are entitled to absolute immunity.

10. The court cannot assume jurisdiction over counsel, as Special State's Attorneys, because they are entitled to qualified immunity.

11. The Rule to Show Cause is barred by the doctrine of laches because Illinois Circuit Courts have appointed Special State's Attorneys for over twenty years.

12. According to Saldana v. Kmart Corp., 260 F.3d 228 (3rd Cir. 2001), the court cannot invoke jurisdiction over a matter under its inherent powers unless the conduct complained of occurred in the presence of the court and affected the orderly disposition of cases before the court.

13. The Rule to Show Cause fails to refer to "one written, unequivocal, clear and unambiguous order entered on the docket sheet of the 'record' allegedly not followed by [counsel]," and thus dismissal is warranted according to In re LaMarre, 494 F.2d 753, 758 (6th Cir. 1974).

14. Federal Rule of Civil Procedure 11 is inapplicable to the Rule to Show Cause because counsel filed no improper pleading with the court.

15. 28 U.S.C. § 1927 is inapplicable to the Rule to Show Cause because counsels' conduct did not delay the proceedings in <u>Schmude v. Sheahan</u>.
16. Comity prohibits the court from exercising jurisdiction to appoint Special State's Attorneys based on the Supreme Court's decision in <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 728 (1996).
17. The court lacks jurisdiction because the case was improperly removed.
18. The Honorable Charles R. Norgle must recuse himself.
19. Counsel demand an evidentiary hearing.

As indicated, some of the matters raised in counsels' affirmative defenses and motions to dismiss the Rule are so patently meritless that the court need not address them, while others are underdeveloped and lack appropriate citations to controlling authorities. Some of the matters raised in counsels' affirmative defenses and motions to dismiss the Rule may even be independently sanctionable under Federal Rule of Civil Procedure 11. As an initial example, counsel argue that the court lacks jurisdiction because the case was improperly removed. However, the court denied a motion to remand, denied a motion to reconsider the order denying remand, and the Seventh Circuit denied leave to appeal the issue of remand after the court certified the issue for appellate review. It is the law of the case that the court properly has federal removal jurisdiction over this case, and it is untenable to argue the contrary when two courts have decided that this court has jurisdiction over the case. As another example, counsel argue that 28 U.S.C. § 1927 is inapplicable to the Rule to Show Cause because counsels' conduct did not delay the proceedings in this case. However, the court did not cite that authority as a basis for the Rule to Show Cause, and did not even intimate that counsels' conduct delayed the proceedings. Federal Rule of Civil Procedure 11 prohibits the filing of pleadings which "insist[] upon a position after it is no longer tenable" or which are brought for an improper purpose. <u>See</u> Fed. R. Civ. P. 11 and Advisory Committee's Notes. With

45

that admonition, the court will not press the point, and will proceed to the Rule to Show cause as framed.

Those remaining matters that warrant consideration will be addressed by the court. However, some of these matters raised as affirmative defenses and in the numerous motions to dismiss the Rule are repetitive of the arguments raised in response to the issues as framed in the Rule to Show Cause, and will be best addressed alongside counsels' answers to the Rule.

In furtherance of counsels' "'everything but the kitchen sink' philosophy" to litigation, they have also denied every allegation raised in the Rule to Show Cause. For the most part, counsel simply deny the allegations in a conclusory fashion with no argument or supporting authority. Additionally, certain allegations are denied despite counsels' admissions concerning the grounds of the underlying impropriety as alleged in the Rule. For example, counsel do not dispute that they filed the In re Special State's Attorneys proceeding in the Circuit Court of Cook County, Chancery Division in order to be appointed as Special State's Attorneys in the matter pending in the federal court, nor that they obtained awards of attorney fees from that court. In fact, counsel admitted that they had filed pleadings in the state court after removal and the court's denial of remand, and counsel have also attached certain orders from that proceeding in the exhibits submitted in response to the Rule.

Viewing counsels' affirmative defenses, motions to dismiss the Rule and responses to the Rule together, it appears that some of the arguments are without merit and do not directly address the issues as framed by this court in the Rule to Show Cause; therefore, the court will consolidate these arguments and address those that are most substantive to the issues presented. Counsels' arguments can be summarized as follows: (1) counsel did not willfully disobey the court's orders,

because there was no written order that was disobeyed; (2) the court does not have jurisdiction to appoint Special State's Attorneys because Illinois circuit courts have exclusive jurisdiction to appoint Special State's Attorneys pursuant to 55 Ill. Comp. Stat. § 5/3-9008; and (3) counsels' conduct did not evidence a lack of candor. The court will now address the arguments raised in response to the Rule.[8]

### D. Substantive Issues to be Determined

#### 1. Whether Counsel Willfully Disobeyed this Court's Orders

Counsel first argue that the Rule should be dismissed because "[it] does not identify one written, unequivocal, clear and unambiguous order entered on the docket sheet of the 'record' allegedly not followed by [counsel]." Theobald & Pinelli Answer at 6 (citing In re LaMarre, 494 F.2d 753, 758 (6th Cir. 1974)). However, this argument may be quickly dispatched, as the court entered an order on April 22, 2002 [docket entry 44-1] denying Defendant Spatz' Motion to Remand. This order unequivocally held that the court has proper jurisdiction over the removed case. Defendant Spatz filed a motion to reconsider that order, which the court denied on May 8, 2002 [docket entry 50-1]. Thereafter, Defendant Spatz filed a motion to certify the April 22, 2002 order for appeal pursuant to 28 U.S.C. § 1292, which the court granted on May 21, 2002 [docket entry 54-1]. The Seventh Circuit denied the petition on June 14, 2002 [docket entry 56-1]. Thus, the court twice held that removal was proper and that it had jurisdiction over the entire case, and the Seventh Circuit denied the petition seeking to reverse the court's order. It is disingenuous to argue that

---

[8] Counsel have demanded an evidentiary hearing; however, the facts in this matter are undisputed, and counsel only offer legal arguments in response to the Rule. In light of counsels' voluminous written submissions in response to the Rule, an evidentiary hearing is not required. The opportunity to be heard is satisfied by permitting documentary submissions, especially where a violation is established on the record and there is no contested issue of fact. See Szabo Food Service v. Canteen Corp., 823 F.2d 1073, 1082 (7th Cir. 1987) (indicating that a hearing is not required if a violation is clearly established on the record).

counsel did not violate a written order when two courts considered the issue and decided that the court had jurisdiction over the case.

The orders holding that the court had jurisdiction over the case carried with them the law surrounding the issue of federal removal jurisdiction. Once a removal petition is filed and proper notice is given to adverse parties in state court, the federal district court has exclusive jurisdiction over the case. See 28 U.S.C. § 1446(d); see also Georgia v. Rachel, 384 U.S. 780, 797 n.27 (1966). The function of the removal statutes, 28 U.S.C. §§ 1441-1452, is to provide a simple means, uniformly applied irrespective of state rules, for defendants entitled to do so to remove actions from state to federal court. See Grubbs v. General Electric Credit Corp., 405 U.S. 699, 705 (1972). The United States Code is clear on the point that after a case is removed from the state court in which it was initially filed, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d). Thus, after removal, any further proceedings in the state court are considered *coram non judice*, as the state court would have acted without jurisdiction. See Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice & Procedure: Jurisdiction and Related Matters, § 3737; see also Kern v. Huidekoper, 103 U.S. 485, 491 (1880) (indicating that any orders entered post-removal by a court from which a case has been removed are *coram non judice* and may be vacated by the district court); Fox Valley AMC/Jeep, Inc. v. AM Credit Corp., 836 F.2d 366, 367 (7th Cir. 1988) (stating that any motion presented to the state court, made after removal to a federal district court, comes too late because the state court has lost its jurisdiction). Removal to federal court divests the state court of jurisdiction over the case.

The law in Illinois on this point is also clear. The Illinois Supreme Court has stated: "It is universally held that when a petition for removal has been filed in Federal district court and the other

48

acts specified by section 1446[] have been performed, the State court loses jurisdiction to proceed further until the case is remanded . . . [and], no action taken by the State court in the interim can stand." Eastern v. Canty, 389 N.E.2d 1160, 1162 (Ill. 1979); see also Hartlein v. Illinois Power Co., 601 N.E.2d 720, 726 (Ill. 1992) (holding that "when a case is removed from State to Federal court, the entire action, including all of the parties and their claims, is transferred to the Federal court").

The *coram non judice* effect given to state court orders entered after removal to federal court is strengthened by the Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court *except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.*" 28 U.S.C. § 2283 (emphasis added). As an exception to the general prohibition of the Anti-Injunction Act, § 2283 permits a federal court to enjoin further state judicial proceedings concerning the removed case in certain situations. One of the long recognized statutory exceptions to the prohibition of the Anti-Injunction Act is the language in 28 U.S.C. § 1446(d), stating that upon removal from state court to federal court "the State court shall proceed no further unless and until the case is remanded." See, e.g., Mitchum v. Foster, 407 U.S. 225, 234-37 (1972) (reiterating that removal to federal court is a situation where there is an express authorization to enjoin state court proceedings). Further, the All Writs Act, 28 U.S.C. § 1651, can also be used to enjoin further state judicial proceedings concerning the removed case or attempts to evade removal. See United States v. New York Telephone Co., 434 U.S. 159, 172 (1977) (stating that a federal court has the power "to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of [its] jurisdiction"). Where later filed state court proceedings are an attempt to subvert federal removal jurisdiction, a

federal court may enjoin state court proceedings in order to effectuate the federal court's jurisdiction. Thus, statutory and case law authority make it perfectly clear that upon removal to federal court, only the federal court has jurisdiction to deal with matters concerning the removed proceeding.

Despite this perfectly clear statutory and case law authority, counsel chose to willfully disregard it. On July 27, 2000, this case was removed from state court to the federal court. At this point in time, the federal court had exclusive jurisdiction over the entire case. On April 22, 2002, the court denied Defendant Spatz' motion to remand the case back to state court. If any doubts had existed as to the propriety of removal, this order dispelled those doubts, and indicated that this court would exercise exclusive jurisdiction over the entire matter. However, on April 29, 2002, counsel proceeded to litigate issues concerning the removed case in the Circuit Court of Cook County, Chancery Division by filing the In re Special State's Attorneys proceeding. Thus, within 5 court days from when the court denied the motion to remand, counsel disregarded that order and in effect attempted to relitigate the issue of federal removal jurisdiction in the state court. Counsel personally proceeded to the state court, and have continued to proceed in that court numerous times, while the federal court was dealing with the case. This evidences counsel's willful disregard of the court's orders, the ruling of the Seventh Circuit, and the clear statutory and case law authority regarding federal removal jurisdiction.

### 2. Whether Counsel Surreptitiously Gained Appointments and Attorney Fees in order to Circumvent this Court's Jurisdiction and Authority

Counsel have not disputed the existence of the In re Special State's Attorneys proceeding, and have not disputed that the proceeding dealt with their attempts to be appointed Special State's Attorneys in the matter pending in the federal court. Counsels' only argument in response to this

indisputable fact is that the federal court did not have jurisdiction to appoint them as Special State's Attorneys.

In support of this contention, counsel raise a number of arguments. First, counsel argue that Illinois Circuit Courts have exclusive jurisdiction to appoint Special State's Attorneys pursuant to 55 Ill. Comp. Stat. § 5/3-9008. In support of this argument counsel argue that such power is solely vested in the Illinois Circuit Court by the Illinois Constitution. Second, counsel argue that the established practice in the various State's Attorneys Offices is to either appoint, or agreed to Illinois Circuit Court appointments of, Special State's Attorneys in matters pending in federal court, without petitioning the United States District Courts for such appointments. Lastly, counsel argue that the law on this issue is not clear, because other district court judges in the Northern District of Illinois have denied motions brought by attorneys seeking to be appointed as Special State's Attorneys.

Counsels' arguments present an untenable legal position in response to the Rule to Show Cause. The court does not dispute the jurisdiction of Illinois Circuit Courts to appoint Special State's Attorneys in matters that are pending before them pursuant to 55 Ill. Comp. Stat. § 5/3-9008. Nor does the court dispute the authority of the State's Attorneys Offices to appoint Special State's Attorneys, without judicial involvement, in cases pending in either state or federal court. What is disputed is the issue of whether counsel can personally seek an Illinois Circuit Court to make such appointments for a matter pending in federal court, where the federal court has specifically been dealing with the issue of appointment with respect to other attorneys in the case and the procedure for obtaining attorney fees.

Counsels' arguments become even more untenable when viewed in light of their conduct and their knowledge in the present situation. As a preliminary matter, counsels' arguments are belied

51

by their conduct. On December 22, 2000, attorneys Theobald and Brunell filed motions seeking to have the federal court to appoint them as Special State's Attorneys. If federal courts do not have the authority to appoint Special State's Attorneys, then why did counsel file such motions with the court? Counsels' arguments are also belied by the statements of attorney Theobald. At the status hearing on his motion seeking to be appointed as a Special State's Attorney, the court discussed the issue of which court had jurisdiction to entertain such a motion after removal. The court stated: "Once the case is removed - - once the case is removed there is no basis that I am aware of that would permit a state judge to enter an order." Schedule of Exhibits, Ex. 8 (December 22, 2000 - Transcript of Proceedings before the Honorable Charles [R]onald Norgle, Sr.). In response, Theobald stated: "*So we are seeking it* [appointment] *here, because the Illinois Statute says we should go before where the case is pending.*" Id. (emphasis added).

Furthermore, counsel were aware that the court amended the appointment of other attorneys as Special State's Attorneys to represent the Sheriff and entered orders awarding attorney fees. Other counsel of record were initially appointed as Special State's Attorneys for the Sheriff by the state court while the matter was pending there prior to removal. After removal, the court adopted those appointments pursuant to 28 U.S.C. § 1450, and from that point forward dealt with matters concerning appointments and awards of attorney fees to those attorneys consistent with the Illinois statute governing such appointments, 55 Ill. Comp. Stat. § 5/3-9008. Furthermore, in their responses to the Rule, counsel have indicated that they were aware that attorney Hynes, representing the Sheriff as a Special State's Attorney, had attempted to return to the state court after removal in order to amend his appointment, but that the state court denied that motion, recognizing the fact that jurisdiction in the state court had ceased upon removal to the federal court. Thereafter, attorney

52

Hynes properly filed that motion in federal court. Each time the Sheriff filed motions to amend the appointments of Special State's Attorneys and awards of attorney fees, counsel were given notice that these other attorneys were seeking appointments and awards of attorney fees from the court pursuant to 55 Ill. Comp. Stat. § 5/3-9008, as these other attorneys sent copies of their motions to all counsel of record. However, in light of their awareness that the federal court was handling issues of appointments and awards of attorney fees pursuant to 55 Ill. Comp. Stat. § 5/3-9008, counsel decided to file pleadings and obtain orders from the state court.

Returning to counsels' arguments in support of their contention that the federal court did not have jurisdiction to appoint them as Special State's Attorneys, the court finds that those arguments are largely unsupported. First, counsel cite no authority for the argument that the Illinois Constitution vests the Illinois Circuit Courts with the exclusive jurisdiction to appoint Special State's Attorneys pursuant to 55 Ill. Comp. Stat. § 5/3-9008. The failure to develop an argument results in that argument being waived. See United States v. Jones, 224 F.3d 621, 626 (7th Cir. 2000) (stating that "[a]rguments that are not adequately developed or supported are waived"); see also Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 788 n.18 (7th Cir. 2003) (same). Further, the court's review of the Illinois Constitution finds no such provision, nor does a review of the case law interpreting 55 Ill. Comp. Stat. § 5/3-9008 support counsels' contention. In fact, Illinois cases interpreting the statute support the plain meaning of the statutory text,[9] and the court's position, that "the court in which said cause or proceeding is pending may appoint some competent attorney"

---

[9] Illinois law is clear that "[w]hen the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction." Quad Cities Open, Inc. v. City of Silvis, – N.E.2d –, 2004 WL 116052, at *5 (Ill. Jan. 23, 2004) (citing People v. Glisson, 782 N.E.2d 251, 255 (Ill. 2002)).

as Special State's Attorney. See, e.g., Lavin v. Board of Comm. Of Cook County, 92 N.E. 291, 294 (Ill. 1910) ("Under this statute *any court* in a proper case may exercise the power of appointing a special state's attorney, whose authority will be limited to the special matter for which he was appointed.") (emphasis added). Further support for this position is found in Sommer v. Goetze, 429 N.E.2d 901, 903 (Ill. App. 2 Dist. 1981), in which that court held that a quasi-judicial tribunal, the Tazwell County Sheriff's Merit Commission, was authorized to appoint a Special State's Attorney in the matter pending before it. The Sommer court's reasoning was based in part on the fact that the "hearing body," whether a court or quasi-judicial tribunal, must "exercise its discretion in reviewing the circumstances to determine the need for such [appointment]" pursuant to the statute. Id. This is powerful reasoning because the court before whom the matter is pending would be fully apprized of the circumstances of the matter and in the best position to determine whether the appointment may be made. As the statute is permissive in nature, a review of the matter is necessary to determine the propriety of appointment in any given case. For example, in People v. Clark, 389 N.E.2d 911, 929 (Ill. App. 2 Dist. 1979), that court held that a DuPage County treasurer was not entitled to the appointment of a Special State's Attorney, because the allegations in that matter indicated that the public official's actions were outside the scope of his employment. In this case, the court expressed reservations as to the applicability of the statute for similar reasons, and invited the parties to brief the issue. See Trans. of March 22, 2002 Hearing, pg. 3-5. Since the matter was pending in this court, and this court was fully apprized of the circumstances of the matter, this court was in the best position to determine whether the appointment may have been made.

Second, counsel argue that the established practice in the various State's Attorneys Offices is to appoint, or agree to Illinois Circuit Court appointments of, Special State's Attorneys in matters

pending in federal court, without petitioning the United States District Courts for such appointments. In support of this argument, counsels' exhibits include letters from various Assistant State's Attorneys describing the general practice of appointing Special State's Attorneys. See Schedule of Exhibits, Ex. 49-53. As indicated earlier, the court does not dispute the authority of the State's Attorneys Offices to appoint Special State's Attorneys, without judicial involvement, in cases pending in either state or federal court. Rather, what is disputed is the issue of whether counsel can personally seek an Illinois Circuit Court to make an appointment and award of attorney fees for a matter pending in federal court, especially after a motion to remand has been denied, counsel were aware that the court was handling issues of appointments and awards of attorney fees pursuant to 55 Ill. Comp. Stat. § 5/3-9008 for other attorneys in the case, and the court had repeatedly indicated that further litigation in the state court would be improper. The letters from the various Assistant State's Attorneys do not speak to this issue. Further, counsels' argument that the Cook County State's Attorneys Office directed counsel to file the proceeding in Chancery Court is of no consequence. While the Cook County State's Attorneys Office could have appointed counsel as Special State's Attorneys without judicial involvement, that office could not have directed counsel to contravene clearly established law regarding federal removal jurisdiction.

Lastly, counsels' argument that the law on this issue is not clear, because other district court judges in the Northern District of Illinois have denied motions brought by attorneys seeking to be appointed as Special State's Attorneys, is largely underdeveloped and is also contradicted by case law authority within this district. In support of this argument that the law on this issue is unclear, counsels' exhibits list a number of cases, pending in the Northern District of Illinois, in which Special State's Attorneys have been appointed to represent parties in those cases by the Circuit Court

of Cook County. See Schedule of Exhibits, Ex. 3 (List of Appointments of Special State's Attorneys filed in the Chancery Division of the Circuit Court of Cook County for cases pending in Federal Court). As a preliminary matter, decisions by other district court judges are not controlling. See Anderson v. Romero, 72 F.3d 518, 525 (7th Cir. 1995) ("District court decisions have no weight as precedents, no authority.") (citations omitted); Colby v. J.C. Penney Co., Inc., 811 F.2d 1119, 1124 (7th Cir. 1987) (indicating that decisions by other district court judges are not controlling unless the doctrine of res judicata or of collateral estoppel applies; rather, such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits) (emphasis in original). However, beyond giving case names, there is no further discussion on this issue. For example, counsel fail to indicate whether any of those cases were removed to federal court before or after the appointments were made in the state court. If those appointments were made prior to removal then those orders would remain in force unless and until the district court took some action. See 28 U.S.C. § 1450 (providing that all "orders and other proceedings had in such [state court] action prior to its removal shall remain in full force and effect until dissolved or modified by the district court"); Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 436 (1974) (indicating that after removal, further procedural issues are governed by federal law, but all state court orders remain in effect until modified by the federal court). Further, counsel fail to indicate whether any of those cases are similar to the present case. The question to be addressed in this case is whether it was appropriate for counsel to seek appointments in the state court *after* removal, the point at which jurisdiction is vested solely in the federal court. Even if such actions had occurred in other cases, those actions would also be improper conduct and contrary to well-established law concerning the jurisdiction of federal courts after removal. Thus, it is no

56

defense to argue that others have acted improperly and have not been sanctioned. The other federal courts handling those cases might not have been aware of the state court's actions. It could very well be that this improper conduct is pervasive, and as such underscores the importance of this Rule to Show Cause.

In the one case which counsel do discuss, <u>Gelso v. Sheahan</u>, No. 03 C 2468 (N.D. Ill. 2003), the district court judge denied a motion to appoint an attorney as a Special State's Attorney pursuant to 55 Ill. Comp. Stat. § 5/3-9008. In that case, the district court judge did not issue an opinion, and did not have the benefit of the parties' briefing the issue before making his ruling from the bench, and as such that case provides no support on the issue. However, the opinions that have addressed the issue support the court's position and directly contradict counsels' argument. <u>See, e.g.</u>, <u>Cobbs v. Sheahan</u>, No. 03 C 3841, 2003 WL 22533667, at *1 (N.D. Ill. Nov. 7, 2003) (appointing Special State's Attorneys pursuant to 55 Ill. Comp. Stat. § 5/3-9008); <u>Harceg v. Brown</u>, 512 F. Supp. 788 (N.D. Ill. 1981) (same).

Additionally, counsel fail to respond to the clearly established law regarding federal removal jurisdiction, which the court outlined in the Rule to Show Cause. The answers to the Rule do not cite such dispositive authority, even if only to argue that their situations fall outside those contemplated by such authority. Counsels' only response is to "deny that after removal, any further proceedings in the State court are considered *coram non judice*." Theobald & Pinelli Answer at 62; Brunell's Answer at 4. "[T]he 'ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist is as unprofessional as it is pointless.'" <u>Mannheim Video, Inc. v. County of Cook</u>, 884 F.2d 1043, 1047 (7th Cir. 1989) (quoting <u>Hill v. Norfolk and Western Ry.</u>, 814 F.2d 1192, 1198 (7th Cir. 1987)).

The court is unable to determine what counsels' logic was in seeking their appointments and awards of attorney fees in the state court while the federal court issued orders stating that it had jurisdiction over the entire case and was handling those matters for all other similarly appointed counsel. The likely answer is that counsel were not inclined to risk that the court would deny their motions to be appointed as Special State's Attorneys; even though, counsel withdrew the motions and did not allow the court the opportunity to make a ruling. The proper way to have addressed this issue would have been for counsel to fairly present the issue and have the court rule on their motions to be appointed as Special State's Attorneys, instead of withdrawing those motions. Faced with an adverse ruling, counsel could have sought review by the Seventh Circuit. See 28 U.S.C. § 1651 (The All Writs Act); see also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 378 n.13 (1981) (indicating that "in the exceptional circumstances for which it was designed, a writ of mandamus . . . might be available" to obtain review of an order disqualifying counsel).

The removal and subsequent denial of remand effectively closed the door to further state court proceedings in this matter. It was improper conduct for counsel to personally seek an Illinois Circuit Court to make such appointments for a matter that was pending in the federal court, thereby circumventing the federal court's authority and jurisdiction. The collateral bar rule provides that court orders, even those later determined to be unconstitutional, must be complied with until amended or vacated. "[T]he collateral bar doctrine prevents the loser from migrating to another tribunal in search of a decision he likes better." Homola v. McNamara, 59 F.3d 647, 651 (7th Cir. 1995) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995)).

So that there is no doubt, counsel are not Special State's Attorneys. The orders to which they point as evidence that they are Special State's Attorneys were entered by the state court well after

58

this court had assumed jurisdiction over this case. Thus, having been entered after the federal court had assumed jurisdiction over the entire matter, those orders are *coram non judice*, and entered by the state court without jurisdiction and as such are without legal effect. As repeatedly stated by the court, counsel are private attorneys. As private attorneys counsel cannot argue that they are entitled to any Eleventh Amendment protections. By way of analogy, a person who improperly acquires a state police officer's badge cannot claim Eleventh Amendment protections. Counsel improperly acquired the appointments to become Special State's Attorneys and similarly cannot claim Eleventh Amendment protections.

### 3. Whether Counsels' Conduct Evidences a Lack of Candor Towards the Court

Lastly, counsel argue that their conduct did not evidence a lack of candor towards the court. Specifically, counsel argue that on three occasions they fully and voluntarily informed the court of their appointments as Special State's Attorneys by the state court, with no negative reaction. Counsel point to the transcripts from the status hearings of March 26 , April 30 and May 15, 2003 in support of this argument.

The obligation of an attorney to act with candor toward the court is almost too obvious to require discussion. All attorneys practicing in the Northern District of Illinois must conform their conduct to the standards set forth in the Rules of Professional Conduct. See N.D. Ill. Local Rules of Professional Conduct 83.50.1. - 83.58.5. The Committee Comments to the Preamble of the Northern District of Illinois Local Rules of Professional Conduct are worthy of recitation:

> The practice of law is a public trust. Lawyers are the trustees of the system by which citizens resolve disputes among themselves, punish and deter crime, and determine their relative rights and responsibilities toward each other and their government. Lawyers therefore are responsible for the character, competence and integrity of the persons whom they assist in joining their profession; for assuring access to that

system through the availability of competent legal counsel, for maintaining public confidence in the system of justice by acting competently and with loyalty to the best interests of their clients; by working to improve that system to meet the challenges of a rapidly changing society; and by defending the integrity of the judicial system against those who would corrupt, abuse or defraud it.

See N.D. Ill. Local Rules of Professional Conduct 83.50.1, Committee Comments ¶ 1.

An attorney's obligation of candor toward the court is codified in Local Rule 83.53.3, Conduct Before a Tribunal, which states, *inter alia*: "In appearing in a professional capacity before a tribunal, a lawyer shall not: make a statement of material fact or law to a tribunal which the lawyer knows or reasonably should know is false." N.D. Ill. Local Rules of Professional Conduct 83.53.3(a)(1). The Committee Comments to the rule provide that "[t]here are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation." See N.D. Ill. Local Rules of Professional Conduct 83.53.3, Committee Comments ¶ 2.

There is a world of difference between being candid and making a passing reference to an issue not being addressed by the court. The word candid is defined as "indicating or suggesting sincere honesty and absence of deception," in order words being forthright. Merriam Webster's Collegiate Dictionary 201 (10th ed. 1996). The word forthright is defined as "free from ambiguity or evasiveness: going straight to the point." Id. at 486. A review of the transcripts from those status hearings which counsel rely on indicate that counsel did not fully and voluntarily inform the court of their appointments as Special State's Attorneys by the Circuit Court of Cook County, and were certainly not candid or forthright with the court.

At the March 26, 2003 status hearing, the following exchange took place:

COURT:
. . .
Who represents the County?

MR. THEOBALD:

Well, the County isn't technically a defendant. The Sheriff is and the deputies are. I suppose the County would - - I am a Special State's Attorney, and so is Mr. Brunell.

. . .

COURT:

We should clarify this. Who represents the County of Cook?

MR. THEOBALD:

Well, as Special State's Attorneys Mr. Brunell and I and Mr. Pinelli represent the individual officers. And I suppose, if there was any liability, that the plaintiffs would argue that the County would be responsible.

So in our capacities as Special State's Attorneys, we represent the officers.

I'm not trying to be evasive. They never named the County of Cook, per se, as a defendant in the case.

COURT:

They named Sheahan. They named the Sheriff.

MR. THEOBALD:

Right.

COURT:

And as you are probably well aware, there was a major decision by the Seventh Circuit in terms of liability of sheriffs. And that matter was certified to the Illinois Supreme Court not too long ago.

And that case originated here in this courtroom, wherein the Sheriff was the defendant in the case, and eventually there was a settlement of about $500,000. And the question was whether the County would be obligated to pay the judgment, wherein the liability was against the Office of the Sheriff.

So it's a case you should look into.

But this motion to dismiss goes to Spatz, Pultz and Koscianski and not Sheahan, is that right?

MR. THEOBALD:

That's correct.

MS. BAHE-JACHNA:

Your Honor, if I could just comment briefly on the point with respect to the point you just made with respect to the Carver decision.

. . .

. . . it's clearly Sheriff Sheahan's position that in light of Carver we would have the authority to negotiate a settlement.

And the County is aware that this lawsuit is out here, and that we have been appointed at [sic.] Special State's Attorneys.

So, I mean, in our - - I guess from our perspective we don't see a need at this point for the County to be represented in this proceeding.

COURT:

The County can voluntarily do perhaps what it wants to do.

61

The real issue in the Carver case was whether they would be obligated to do something or to become liable to pay a judgment which was entered against the Sheriff.

. . .

But we need not deal with that issue today.

Trans. Of March 26, 2003 Hearing, pg. 5-7.

The issue the court was addressing during that status hearing was whether Cook County was represented in the case, or aware of the case, in terms of being heard on their potential liability in light of the Carver decision. The aversion of counsel to having an attorney in court on behalf of Cook County, the ultimate bill payor for the Office of the Sheriff's liability, if any, is not consistent with the ends of Carver. The statements of attorney Theobald, indicating that he and counsel were Special State's Attorneys, were fleeting references to what was only later discovered by the court. Concepts of fair presentment of the issue were ignored. Attorney Theobald was anything but forthright. In order to be forthright, attorney Theobald should have fully apprized the court of all of the circumstances surrounding counsels' actions in the state court. Not one exhibit was marked and presented to the court.

At the April 30, 2003 status hearing, the court returned to the issue of whether Cook County was represented in the case, or aware of the case, in terms of being heard on their potential liability in light of the Carver decision. At that status hearing, the following exchange took place:

COURT:
The Court issued a minute order a while ago following the Seventh Circuit's opinion in the Carver case.
The Seventh Circuit held that the County is a necessary party where the Sheriff is named as a defendant.
And so the County should be here today.
This is not to say that the County would be liable substantively as the County. But there is the potential that if a judgment is entered against the Sheriff by way of trial

or otherwise, the County can be obligated to pay the bill, according to Carver versus LaSalle County.

I don't know if you are aware of that recent case. But the County is not here and should be here.

So I entered an order bringing this to the attention of Cook County. They are not here, and they must be here.

. . .

MR. THEOBALD:

Can I respond?

COURT:

If there is liability as to the Sheriff, the County will pay the bill.

CLERK:

One of the parties will have to notice the County.

MR. THEOBALD:

Judge, the fact that - - at this point I think it's a little premature for that.

But I and Mr. Brunell and Mr. Pinelli, we report to the County Board. We are Special State's Attorneys.

This case isn't going to trial.

COURT:

You may be a special attorney, but not by order of this Court.

MR. THEOBALD:

I understand. But by order of the Circuit Court and by an agreement with the State's Attorney of Cook County I report to the County Board.

This case will not be tried or settled unless the County Board of Cook County says so.

So your concerns about the County, I think - - we report to the County Board.

COURT:

That is not sufficient.

The County - - somebody may report to the County, but if you read the County - - the Carver decision, the County must be represented by counsel here.

. . .

And to see to it that they do appear, we will set the matter for a limited status and the appearance of counsel for Cook County, whomever that may be.

Trans. of April 30, 2003 Hearing, pg. 3-8.

Again, the statements of attorney Theobald, indicating that he and counsel were Special State's Attorneys, were fleeting references to what was only later discovered by the court. Attorney Theobald was anything but forthright. The court's concern at that time was the issue that Cook County was deemed a necessary party according to the <u>Carver</u> decision, and at that time was not

63

represented in the case. Again there was aversion to having an attorney for the county in the courtroom.

Finally, at the May 15, 2003 status hearing, the court returned to the issue of whether Cook County was represented in the case, or aware of the case, in terms of being heard on their potential liability in light of the Carver decision. At that status hearing, the following exchange took place:

COURT:
Is counsel for the County of Cook present?
MR. THEOBALD:
No.
. . .
COURT:
I think the best way to proceed on that particular point is to order the plaintiff to notify and serve the County of Cook with a copy of the most recent complaint that was filed in the case.
I mentioned several weeks ago the Carver case. The citation is 324 F.3d 947, Seventh Circuit 2003.
The County must be here in this case. And that is what the Seventh Circuit has said, and that is what the Illinois Supreme Court has said.
And so I think the easiest course of action is just to order the plaintiff to take the necessary steps to bring in the County.
MR. KARNEZIS:
I will do that, your Honor.
COURT:
. . . Putting that aside for the moment, what is the status of the case otherwise?
MR. THEOBALD:
You set it for trial last time, Judge. It's set for trial on September 2nd.
COURT:
Right. Are there any substantive motions pending?
MR. THEOBALD:
There is nothing pending right now. We are going to probably file a motion for summary judgment before the end of July.
. . .
I just want to repeat what I said the last time. And I fully understand your position about the County. But insofar as I report to the County Board, we just object to them being brought in at this late date.
. . .

Trans. of May 15, 2003 Hearing, pg. 3-7.

64

In this instance, the statements of attorney Theobald, indicating that he reports to the County Board, did not even address counsels' alleged statuses as a Special State's Attorneys. Why or how attorneys for the individual Defendants were reporting to the Cook County Board was not explained nor was any basis for objecting to having counsel for Cook County, in view of the <u>Carver</u> decision, articulated. Once again, attorney Theobald was anything but forthright, and did not fully apprize the court of all of the circumstances surrounding counsels' actions in the state court. Again there was an objection to having counsel for the county present.

Viewing all of these earlier status hearings together, there is nothing in any of these transcripts which would indicate that counsel fully apprized the court that counsel personally filed pleadings in the Circuit Court of Cook County after removal, after the motion to be appointed as Special State's Attorney that were filed in this court were withdrawn, and after the denial of remand. All that the above-cited transcripts reflect is that counsel referred to themselves as Special State's Attorneys. The statements on which counsel rely lack transparency. Making a passing reference to the issue is not the same as being forthright and fairly presenting the matter to the court. In none of these transcripts do counsel indicate that they personally filed pleadings in the Circuit Court of Cook County after removal, after their motions to be so appointed by this court were withdrawn, and after a denial of remand. It was not until the May 23, 2003 status hearing that the court was informed of the facts of counsels' conduct.

At the May 23, 2003 status hearing on attorney Ficaro's motion to withdraw, the following exchange took place:

COURT:
If he withdraws, who is coming in?
MR. PINELLI:

65

Judge, I already have an appearance on file as co-counsel for Miss Pultz, and I will remain.

COURT:

You are her private attorney?

MR. PINELLI:

Yes.

No. Judge, I am appointed by the Circuit Court of Cook County.

COURT:

What makes you think so?

MR. PINELLI:

I'm sorry?

COURT:

What makes you think so?

MR. PINELLI:

I have an order from Judge Lott in Chancery Court appointing me.

COURT:

When did that occur?

MR. PINELLI:

Last May, Judge.

COURT:

In this case?

MR. PINELLI:

Yes. No, not in this case.

We filed a petition with the agreement of the Cook County State's Attorney seeking to be appointed and seeking to represent Miss Pultz, and they agreed to that order.

COURT:

The order was entered on July 6, 2000, with respect to Special State's Attorneys by Judge Donnersberger, or someone with that name.

MR. PINELLI:

With respect to the Sheriff, yes, your Honor not the individual defendants.

COURT:

Okay. But you are not appointed counsel in this case.

MR. THEOBALD:

Yes.

MR. PINELLI:

Yes, I am. Yes, Judge.

COURT:

Let me see a copy of the order.

MR. PINELLI:

Judge, I didn't bring it with me today. I will have it here in half an hour.

COURT:

Once this case was removed, then no Judge in the state court could issue any orders in this case.

66

MR. PINELLI:

Judge, we didn't file this case or indicate that we were seeking any order with respect to any matter before your Honor. We filed the petition in the Circuit Court of Cook County seeking to have counsel appointed.

COURT:

Not in this case.

MR. THEOBALD:

Yes.

MR. PINELLI:

On behalf of the defendants.

COURT:

After it was here? After it was here?

MR. THEOBALD:

Yes.

MR. PINELLI:

After this case was removed, yes, sir.

COURT:

Then you cannot do that.

MR. THEOBALD:

Judge - -

COURT:

I'm talking to one attorney at a time.

MR. THEOBALD:

Well, I'm the same thing.

COURT:

Well, no you are not. You are not special attorneys appointed to this case.

Once this case was removed, it was removed, and no attorney, once removed, could go before any state judge and file a motion. And any order that would be entered under those circumstances would be an improper order and unenforceable.

Once the case is removed, just this Court makes such decisions.

You are not an appointed attorney in this case, nor is Mr. Theobald. If you are here, it is because you are employed by individuals.

MR. PINELLI:

Judge, I have my appearance on file on behalf of Miss Pultz, and I intend to litigate this matter and I will consider what you have said.

COURT:

Are you telling me that once this case was removed to the federal court, notwithstanding removal that you went before a state judge and filed a motion?

MR. PINELLI:

Not a motion, a petition.

COURT:

A petition. A pleading.

MR. PINELLI:

A separate lawsuit by Miss Pultz seeking to have counsel appointed on her behalf.

MR. THEOBALD:

Could I explain, Judge?

COURT:

Not you.

MR. THEOBALD:

I am involved in this too.

COURT:

We will get to you, Mr. Theobald.

MR. THEOBALD:

All right.

COURT:

Any order that was entered by any state judge appointing an attorney to represent a party in this case, once this case was removed to the federal court, is void.

That applies - - if that is what you did, if you, knowing of the removal, filed a petition or a motion before a state judge, that was improper conduct. And any order that a judge entered, once this case was removed to the federal court, was an improper order.

He or she acted without jurisdiction.

You did the same, Mr. Theobald?

MR. THEOBALD:

Yes, Judge.

. . .

A new independent action was filed, with the agreement of the Circuit Court, with the agreement of the State's Attorney of Cook County.

I, Mr. Pinelli, Mr. Brunell and Mr. Ficaro were appointed as Special State's Attorneys under a State Statute to represent them here. And this has been going on for probably - - well, I have been practicing for 29 years, and that's been the procedure, to go before a state court judge.

The only time that a federal court judge appointed a Special State's Attorney that I know of is when Judge Bua appointed me to represent the Sheriff 15 years ago.

COURT:

Once the case is remanded [*sic.*] to the federal court, the state court loses jurisdiction and cannot act with respect to that case any longer.

If you want to be here in this case, it is only as private counsel. As a matter of fact, several hearings back, when you filed a motion here with respect to being appointed a Special State's Attorney, the Court made some comments, and you then withdrew the motion.

I don't know if you then went to the state court. I don't know if you did that.

But once the case is in the federal court, no state judge can enter any order in that case. The state court has lost its jurisdiction.

And so if you are - - if you think that you are Special State's Attorneys in this case, that is not the case.

MR. THEOBALD:

. . .

But we - - I would disagree - - we have been appointed, we are here as private counsel, whatever, and we are - - we are here.

COURT:

Well, you are here only if you choose to act as private attorneys. And if that's what you want to do in this Court, you can be here as private attorneys.

But you are not special attorneys as far as this Court is concerned.

MR. THEOBALD:

We are just asking that Mr. Ficaro's appearance be withdrawn and - -

MR. PINELLI:

My appearance has been on file. You gave me leave to appear as Anthony Pinelli, Attorney at Law, sometime ago.

COURT:

You want to appear as a private attorney?

MR. PINELLI:

I want to continue in this matter. I will consider what your Honor has said today.

COURT:

It's not consideration, it's an order.

MR. PINELLI:

I understand it's an order.

COURT:

Who is going to pay your bill?

MR. PINELLI:

I don't know the answer to that as I stand here.

COURT:

But it will not be Cook County and it will not be the State's Attorney.

Do you want to - -

MR. PINELLI:

Judge, I understand your order. And with all due respect, I understand your order. And now I have to decide what to do about it.

COURT:

Do you want to decide now?

MR. PINELLI:

I don't want to withdraw. I want to remain in the case.

COURT:

Well, you are here only as private counsel.

MR. PINELLI:

Your Honor, irrespective of my status, I filed an appearance and I would like to continue representing Miss Pultz. If what you are saying - - your order is your order, and now I have to consider whether I need to have some sort of an appeal, whether I need to just remain in the case.

I have no intention of withdrawing at this point or asking to withdraw here.

. . .

COURT:
And if you are here, you are here as a private attorney.
That's this Court's position.
And to reemphasize this for the record, once the case was brought here, having been
removed from the state court to the federal court, no state judge could enter an order
regarding this case.
That's this Court's position.
MR. PINELLI:
Yes, sir.

Trans. of May 23, 2003 Hearing, pg. 5-13.

Thus, only after a probing inquiry into the facts of their conduct was the court informed of

the reality of counsels' conduct. Being so informed, the court stated that such conduct was improper

and without effect. The court emphasized for the record that "once the case was brought here,

having been removed from the state court to the federal court, no state judge could enter an order

regarding this case." Id. at 13. The court further emphasized that counsel were in the case only as

private attorneys. Id. Even after the court made these statements, counsel did not provide the court

with the orders at issue and did not take steps to rectify the situation or ask the court to reconsider

its position by allowing briefing on the issue, as the court had earlier offered. See Trans. of March

22, 2002, pg. 4-9. The time to fully disclose the situation would have been before or immediately

after counsel personally sought and obtained appointments in the state court, or at the very least, in

the immediate wake of the May 23, 2003 status hearing. Rather, counsel were content to let the

court linger under the belief that counsel were privately retained attorneys, contrary to the reality of

their actions. This conduct evidences an egregious lack of candor towards the court. The

egregiousness of counsels' lack of candor is amplified by the fact that they repeatedly engaged in this

course of conduct. Even after the May 23, 2003 status hearing, counsel continued to personally file motions and obtain attorney fee awards in the state court, and did so without informing the court.

Attorney Brunell presents an additional argument in support of the contention that he did not act with a lack of candor towards the court. Specifically, attorney Brunell argues that the record does not bear out any moment in time in which he made an affirmative misrepresentation to this court or stood silent, failing to make a material disclosure. See Brunell Answer at 4-5, 8. Attorney Brunell mistakenly believes the allegations that counsel were not candid with the court are premised solely on two court appearances, March 22, 2002 and May 23, 2003, at which time he was not personally present in court. This argument narrowly reads the Rule, and is mistaken because the basis for the Rule did not concern only two status hearings, but rather, counsels' conduct throughout the entire proceeding.

Attorneys Theobald and Brunell initially filed their motions to be appointed as Special State's Attorneys in the federal court. At the March 22, 2002 status hearing, attorney Theobald withdrew his motion, and also indicated that he was appearing on behalf of attorney Brunell and had the authority to withdraw the motion on his behalf as well. It is the conduct that occurred thereafter that shows the most egregious lack of candor on behalf of counsel. Rather than allow the federal court to rule on their motions, they elected to personally proceed to have the state court deal with the issue, undisclosed to the court. Counsel continued to personally proceed to have the state court deal with the issue in spite of their knowledge that the court was dealing with such matters with regard to other attorneys in the case. Additionally, after the May 23, 2003 status hearing, at which time the court explicitly stated that further litigation in the state court would be improper, counsel continued to personally proceed in the state court, undisclosed to the court. The fact that attorney Brunell elected

71

to have another attorney appear in his stead is of no consequence, and is no defense to clear violations of well-established authority concerning the jurisdiction of federal courts following removal. Having allowed other attorneys to appear in his stead, attorney Brunell should have been informed by them of the proceedings or should have reviewed the transcripts of those proceedings. This was certainly a circumstance where failure to make a disclosure is the equivalent of an affirmative misrepresentation. If counsel had questions as to the propriety of their conduct, they should have been candid with the court and directly raised the issue. However, counsel never got straight to the point and directly raised the issue; rather, counsel elected to remain silent and evasive as their undisclosed conduct, as officers of the court, left much to be desired.

### E. Appropriate Sanction

The Seventh Circuit has stated that courts have "ample authority to govern the practice of counsel in the litigation." Belleville Catering Co. v. Champaign Market Place, L.L.C., 350 F.3d 691, 694 (7th Cir. 2003).[10] The most recognized source of such authority is Federal Rule of Civil Procedure 11. However, Federal Rule of Civil Procedure 11 is not the exclusive source for controlling attorney conduct. "It does not inhibit the court in punishing for contempt, in exercising its inherent powers, or in imposing sanctions, awarding expenses, or directing remedial action authorized under other rules or under 28 U.S.C. § 1927." Fed. R. Civ. P. 11 Advisory Committee Notes (citing Chambers, 501 U.S. 32). Likewise, the district courts and courts of appeal can sanction

---

[10] In Belleville Catering, the Seventh Circuit held that the plaintiffs had failed to establish federal diversity jurisdiction and remanded the case for dismissal. 350 F.3d at 694. Stating that "[t]he costs of a doomed foray into federal court should fall on the lawyers who failed to do their homework, not on hapless clients," the Seventh Circuit ordered counsel to "perform, without additional fees, any further services that are necessary to bring this suit to a conclusion in state court, or via settlement." Id. The Seventh Circuit emphasized that "[t]his is not intended as a sanction, but simply to ensure that clients need not pay for lawyers' time that has been wasted for reasons beyond the clients' control." Id. The Seventh Circuit stated that authority for such an order emanates from the court's "ample authority to govern the practice of counsel in the litigation." Id.

attorneys for a variety of unethical conduct. See, e.g., Carr v. O'Leary, 169 F.3d 1124, 1128 (7th Cir. 1999) (evidencing a rule to show cause issued by the Seventh Circuit against the Illinois Attorney General's Office as to "why the authors of [a] brief should not be sanctioned for unethical advocacy"). In the present case, the court is burdened with a situation as to which the United States Code and the Federal Rules of Civil Procedure do not direct an appropriate sanction.

The situation presented in this case involves the conduct of counsel having personally sought an Illinois Circuit Court to make appointments and awards of attorney fees for a matter that was pending in federal court. The federal court before which the entire matter was pending is the court in the best position to determine whom to appoint and the true value of services rendered given the intricacies of the case. See Mother and Father, et al. v. Cassidy, 338 F.3d 704, 710-12 (7th Cir. 2003) (holding that federal district court could not transfer the determination of prevailing party fees pursuant to Federal Rule of Civil Procedure 54 to state court after plaintiff voluntarily dismissed federal claims); see also Mary Francis Derfner & Arthur D. Wolf, Court Awarded Attorney Fees, § 18.05[1] at 18-69 (rev. ed. 2003) ("As a general rule, a motion seeking an award of attorney fees should be sought in the court or tribunal in which those fees were incurred, unless some statute, court order, or rule of court requires another procedure."). Further, counsel proceeded with that conduct after a motion to remand had been denied, while that issue of remand was on appeal in the Seventh Circuit and after the Seventh Circuit's decision, after they were aware that the court was handling issues of appointments and awards of attorney fees pursuant to 55 Ill. Comp. Stat. § 5/3-9008 for other attorneys in the case, and despite the court's repeated admonitions that further litigation in the state court would be in contravention of the federal court's jurisdiction and improper.

Sections 1441 through 1452 of Title 28 of the United States Code deal with the removal of cases from state court to federal court. The law is clear that upon removal, "the State court shall proceed no further unless and until the case is remanded," 28 U.S.C. § 1446(d), and that any orders entered post-removal by the state court are *coram non judice* as the state court's jurisdiction is divested upon removal to federal court, see Huidekoper, 103 U.S. at 491; Fox Valley AMC/Jeep, 836 F.2d at 367. However, the sections of the United States Code dealing with removal do not provide what sanctions may be imposed when an attorney or party disregards the command of § 1446(d) that "the State court *shall* proceed no further." 28 U.S.C. § 1446(d) (emphasis added).

The Federal Rules of Civil Procedure do not provide what sanctions may be imposed when an attorney or party circumvents a court's authority and jurisdiction. Counsel attempted to deprive the court of jurisdiction over an aspect of the case pending before it by proceeding in the state court after removal. While counsels' conduct occurred in the state court, and no pleadings were filed in the court, the effects of counsels' conduct were felt in the federal court. Counsel continued to advocate their position that they were appointed as Special State's Attorneys in the federal court when the orders of the state court were clearly without jurisdiction and of no effect.

It is in a situation such as this that resorting to the court's inherent powers is appropriate in order for the court to control the conduct of attorneys appearing before it, to maintain its authority and to supervise the judicial process. As the Supreme Court has stated: "At the very least, the inherent power must continue to exist to fill in the interstices." Chambers, 501 U.S. at 46. "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the tasks, the court may safely rely on its inherent powers." Id. at 50.

"Chambers and Roadway Express depict lawyers' flouting of judicial orders as the paradigm of sanctionable conduct." In re Mann, 311 F.3d 788, 790 (7th Cir. 2002). In Chambers, the defendant, G. Russell Chambers, agreed to sell the facilities and broadcast license of a television station to the plaintiff, NASCO, Inc. Chambers, 530 U.S. at 35-36. Chambers subsequently changed his mind and refused to consummate the sale. Id. at 36. Thereafter, NASCO filed an action for specific performance in federal district court, and Chambers and his attorneys initiated a series of dilatory and oppressive tactics intended to harass and delay the proceedings, to deprive the court of jurisdiction, and to frustrate specific performance. Id. at 36-42. For example, Chambers and his attorneys attempted to place the facilities in a trust immediately upon receiving notice that NASCO intended to seek a temporary restraining order, and filed the necessary documents in the state court prior to the TRO hearing in federal court. Id. at 36-37. NASCO ultimately filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927 and the court's inherent powers. Id. at 40. In deciding whether to sanction Chambers, the federal district court determined that Rule 11 was "'insufficient' for its purposes" as it did not fully reach all of the conduct engaged in by Chambers and that § 1927 applied only to attorneys. Id. at 41 (citing NASCO, Inc. v. Calcasieu Television & Radio, Inc., 124 F.R.D. 120, 139 (W.D. La. 1989)). The federal district court imposed sanctions of nearly one million dollars in attorney fees against Chambers, based on the court's inherent powers, stating that "'[t]he wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court.'" Id. at 42 (citing NASCO, Inc., 124 F.R.D. at 139). On appeal, the Fifth Circuit and the United States Supreme Court affirmed the sanctions award pursuant to the district court's inherent powers. Id. at 43, 58. Thus like the situation presented in Chambers, the fact that some of the sanctionable conduct at issue occurred in the state

75

court, and outside the presence of the federal court, does not prevent the imposition of sanctions. "As long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying court orders." Id. at 57; see also Kleiner v. First Nat'l. Bank of Atlanta, 751 F.2d 1193, 1207-10 (11th Cir.1985) (affirming sanction against attorney of $50,000.00 and disqualifying him from further participation in the case, where attorney secretly solicited exclusion requests from potential members of the plaintiff class in violation of a court order).

In the present case, counsels' conduct constitutes more than simply flouting judicial orders. Counsels' conduct was an affront to the United States District Court for the Northern District of Illinois and the Seventh Circuit Court of Appeals, as well as the principles of federalism. As the inherent powers are "rooted [in] considerations of institutional self-defense," Giannattasio, 979 F.2d at 101, resort to such powers is appropriate where the conduct at issue, as in the present case, is counterproductive to the removal jurisdiction of the federal courts.

The court has given careful, case-specific consideration to the character of the sanctionable conduct at issue. See Johnson, 327 F.3d at 562. Counsels' sanctionable conduct is triumvirate. First, counsel willfully disregarded statutory and case law authority, which clearly established that following removal the federal court has exclusive jurisdiction over the case, including all of the parties and all of their claims, and that the state court is divested of jurisdiction and can proceed no further with regard to the removed case. Second, counsel willfully disobeyed the court's orders, and the order of the Seventh Circuit, which stated that the court was exercising federal removal jurisdiction over the entire matter. Third, counsels' conduct exhibited an egregious lack of candor

toward the court, as the actions of counsel were not the result of accident or mistake, but rather, were knowing, intentional and repeated.

A range of reasonable sanctions would include issuing an admonition or censure, requiring participation in continuing legal education programs, referring the matter to appropriate disciplinary authorities, ordering remedial actions to be taken, or ordering a fine payable to the court. The court has considered the range of possible sanctions and, in the exercise of its discretion, finds that the clearest sanction to be applied should be an order of disgorgement of the attorney fees related to the benefit gained from the sanctionable conduct at issue. The sanction of disgorgement is remedial in nature, and is the most appropriate way to address the conduct of counsel by denying them the ill-gotten fruits of their conduct. See, e.g., In re Eastern Sugar Antitrust Litigation, 697 F.2d 524, 533-34 (3rd Cir. 1982) (imposing sanction of disgorgement of attorney fees for violation of ethical duties to clients). Any sanction other than disgorgement would fail to address the gravamen of counsels' conduct. The sanction of disgorgement is proportional to the underlying conduct in this matter, as the aim of counsels' conduct was financial gain, and this sanction is the most appropriate deterrent to similar future conduct. See Chambers, 501 U.S. at 45 (indicating the courts have discretion in "fashion[ing] an appropriate sanction for conduct which abuses the judicial process"); Diettrich, 168 F.3d at 964 (indicating that the sanction imposed must be proportional to the wrongful conduct at issue).

While counsel do not dispute that they filed the In re Special State's Attorneys proceeding in the Circuit Court of Cook County, Chancery Division in order to be appointed as Special State's Attorneys in the matter pending in the federal court nor that they obtained awards of attorney fees from that court, counsels' submissions lack specificity as to the total amount of attorney fees that

77

they improperly obtained. Therefore, within 28 days of this order, counsel shall submit to the court an accounting of all fees requested and received with respect to their representation in this civil case.

Counsels' conduct was an affront to the authority of the federal court following removal, the court's order denying remand, the Seventh Circuit's order denying appeal to review the order denying remand, and the court's repeated admonitions that further litigation in the state court would be improper. In effect, counsel rejected those rulings as evidenced by their willful disregard of those orders and the pattern of conduct in which they engaged. Counsels' conduct also exhibited an egregious lack of candor toward the court, as counsel never directly informed the court of their conduct and were content to let the court linger under the belief that they were privately retained attorneys. Therefore, it is not enough to simply order disgorgement of their improperly gained attorney fees. The court finds that a fine payable to the court is appropriate. While the sanction of disgorgement will return counsel and the affected parties to their positions before the sanctionable conduct, the sanction of a fine of $5,000 assessed against attorneys Theobald, Brunell and Pinelli individually, and payable to the court, will serve to underscore the impropriety of counsels' conduct. To impose a lesser amount would tend to deprecate the seriousness of counsel's repeated course of conduct, and would fail to discipline counsel for their misconduct. See Kleiner, 751 F.2d at 1209 (stating that the court "possesses the inherent power to discipline counsel for misconduct, short of behavior giving rise to disbarment or criminal censure, without resort to the powers of civil or criminal contempt").

## V. CONCLUSION

For the reasons set forth above, counsels' Motion to Recuse is denied. Additionally, the court has reviewed and considered counsels' responses to the Rule to Show Cause, as well as the

numerous Motions to Dismiss the Rule, and finds that they are inadequate and fail to present any reasonable basis to deny the Rule on its merits. Therefore, counsels' Motions to Dismiss the Rule to Show Cause are also denied.

The court finds that attorneys Edward R. Theobald, Alan R. Brunell and Anthony Pinelli have disobeyed the orders of the United States District Court and acted improperly by seeking and obtaining numerous awards of attorney fees, as improperly appointed counsel, in the Circuit Court of Cook County, after the entire cause of action had been removed to the United States District Court. Further, counsel proceeded with that conduct after a motion to remand had been denied, while that issue of remand was on appeal in the Seventh Circuit and after the Seventh Circuit's decision, after they were aware that the court was handling issues of appointments and awards of attorney fees pursuant to 55 Ill. Comp. Stat. § 5/3-9008 for other attorneys in the case, and despite the court's repeated admonitions that further litigation in the state court would be in contravention of the federal court's jurisdiction and improper. Additionally, the court finds that the statements and actions of each attorney violated their duty of candor to the court. The sanctionable conduct of each officer of the court was willful, intentional and repeated, and was an attempt to circumvent the United States District Court's removal jurisdiction. Attorneys Edward R. Theobald, Alan R. Brunell and Anthony Pinelli are hereby sanctioned pursuant to the court's inherent powers.

It is hereby ordered that within 28 days from the date of this order, attorneys Theobald, Brunell and Pinelli shall file with the Clerk's Office a detailed accounting of all fees requested and received in the Circuit Court of Cook County which relate to this civil matter, including copies of all pleadings filed by counsel, orders entered by the Circuit Court of Cook County, and all fee petitions submitted to date. Once counsel submit such accountings, the court will enter an order

79

requiring counsel to disgorge those improperly acquired attorney fees in a specific dollar amount to the source of such funds by May 28, 2004.

It is hereby further ordered that a sanction of a fine in the amount of $5,000 is assessed against attorneys Theobald, Brunell and Pinelli individually, and payable to the court, no later than May 28, 2004.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: _3-29-04_